STATE OF CONNECTICUT *v.* JOSHUA JACOBS
(14742)

PETERS, C. J., BORDEN, BERDON, KATZ and M. HENNESSEY, Js.

---

Argued January 12—decision released May 24, 1994

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *Kevin Randolph,* deputy assistant public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, was *John M. Waddock,* assistant state's attorney, for the appellee (state).

BORDEN, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the fourth amendment exclusionary rule did not apply to the hearing on the state's motion for revocation of the defendant's probation. The defendant appeals, following our grant of certification,[1] from the judgment

[1] We granted certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that, under the circumstances of this case, the fourth amendment exclusionary rule did not apply to these revocation proceedings?" *State* v. *Jacobs,* 225 Conn. 920, 652 A.2d 822 (1993).

of the Appellate Court. That judgment affirmed the judgment of the trial court revoking the defendant's probation and ordering that the defendant's previously suspended sentence be executed. *State* v. *Jacobs,* 30 Conn. App. 340, 620 A.2d 198 (1993). The trial court had refused to hold an evidentiary hearing on the defendant's motion to suppress evidence seized pursuant to two search warrants, on the ground that the exclusionary rule does not apply to probation revocation proceedings. We affirm the judgment of the Appellate Court.

The facts are undisputed. On March 23, 1990, pursuant to a conviction for possession of marijuana with intent to sell in violation of General Statutes (Rev. to 1989) § 21a-277, the trial court, *Damiani, J.,* sentenced the defendant to five years incarceration, execution suspended, and placed him on probation for three years. That conviction followed a search of the defendant's residence that had yielded eight pounds of marijuana, a high capacity semiautomatic pistol and another weapon. One of the conditions of probation was that the defendant not violate the criminal laws of this state.

On August 2, 1990, the defendant called the Hamden police to his residence in order to investigate a burglary. While at the defendant's residence, Investigator Boguslaw Kicak questioned the defendant about a gun case that was in plain view. The defendant stated that he owned a Starr .45 caliber semiautomatic pistol, and that he had a permit for the weapon. Subsequent investigation by the Hamden police department disclosed, however, that the defendant's permit had been revoked because of his conviction for possession of marijuana, an unclassified felony. Consequently, the Hamden police department sought a warrant to search the defendant's residence and seize the pistol, ammunition, other firearms, and various other items, asserting that the items sought to be seized were evidence of the com-

mission of the offense of criminal possession of a firearm by a convicted felon in violation of General Statutes (Rev. to 1989) § 53a-217.[2] The affiants on the search warrant affidavit, who stated the foregoing facts, were Kicak and Officer Linda Guerra.

On August 17, 1990, after a Superior Court judge issued the warrant, Guerra and Kicak searched the defendant's residence pursuant to the warrant. Guerra found and seized the Starr pistol and another, loaded, semiautomatic revolver. During the search, Guerra observed in plain view two zipper sealed plastic bags containing a green, plant-like material that, on the basis of her experience in law enforcement, she believed to be marijuana. Kicak field tested the material, and it tested positive for marijuana.

Despite these observations, the officers did not seize the plastic bags, although they were aware of the defendant's conviction of possession of marijuana with intent to sell. Instead, on the same day, Guerra and Kicak sought and secured a second search warrant for marijuana and related paraphernalia. In their supporting affidavit for the second warrant, Guerra and Kicak described the first search. They stated that the defendant had been charged with violating § 53a-217 as a result of the search, and that they had seen in plain view the two plastic bags, the contents of which had field tested positive for marijuana. Acting pursuant to

---

[2] General Statutes (Rev. to 1989) § 53a-217 provides in relevant part: "CRIMINAL USE OF PISTOL, REVOLVER OR ELECTRONIC DEFENSE WEAPON: CLASS D FELONY. (a) A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under section 53a-87, 53a-152, 53a-153 or 53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

this second warrant, the police searched the defendant's residence, and seized a substantial amount of marijuana and drug paraphernalia.

Thereafter, the defendant's probation officer moved to revoke the probation on the basis of, inter alia, the defendant's possession of the marijuana and paraphernalia seized during the second search. The defendant moved to suppress the evidence seized, asserting that when Kicak and Guerra applied for the warrants to search the defendant's residence, they knew or had reason to know that the defendant was on probation. The trial court, *Schimelman, J.,* refused to hold an evidentiary hearing on the defendant's motion to suppress, on the ground that the exclusionary rule does not apply to revocation of probation proceedings. After a hearing on the motion to revoke probation, the trial court found that the state had proven by reliable and probative evidence that the defendant, by possessing marijuana, had violated the condition of his probation that he not violate any criminal law of this state. Accordingly, the trial court revoked the probation and imposed the sentence of five years incarceration.

On appeal to the Appellate Court, the defendant claimed that: (1) the exclusionary rule applied to the revocation of probation proceedings; (2) the first search warrant failed to establish probable cause; and (3) therefore, the evidence was illegally seized and should have been suppressed. *State* v. *Jacobs,* supra, 30 Conn. App. 340. The Appellate Court rejected his contentions, and affirmed the judgment of the trial court. Id., 346. This appeal followed.

The defendant repeats in this court his basic position as he asserted it in the Appellate Court. He claims that: (1) the fourth amendment exclusionary rule applies to a revocation of probation proceeding if the officers performing the search knew or should have known of the

defendant's probationary status; (2) the officers in his case had, or had reason to have, that knowledge; (3) if a pretextual motive on the part of the police is required for the application of the exclusionary rule, that requirement was met here because the first warrant facially lacked probable cause to believe that the defendant had committed any crime; and (4) the defect in the first warrant invalidated the search performed pursuant to the second warrant. We disagree.

The defendant's arguments rest on two essential premises, namely, that: (1) dictum of this court in *Payne* v. *Robinson,* 207 Conn. 565, 573, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), applies to this case so as to require the application of the exclusionary rule; and (2) the first warrant was defective because it rested on the legally incorrect assertion that the defendant's possession in his residence of the Starr pistol was a violation of § 53a-217. See footnote 2. With respect to the first premise, we conclude that the dictum in *Payne* has no application to this case because in this case, unlike *Payne,* the search was conducted pursuant to a warrant. With respect to the second premise, we conclude that, although there may be probation revocation cases in which even a search pursuant to a warrant might be subject to the exclusionary rule, this is not such a case.

*Payne* v. *Robinson,* supra, 207 Conn. 565, was a habeas corpus case in which the petitioner challenged the validity of his revocation of probation. The basis of the petitioner's challenge was the warrantless search of his car. The petitioner was on probation at the time of the search, but the officer conducting the search had no knowledge of the probationary status. Id., 571. In that context, we held that the fourth amendment exclusionary rule did not apply. Id., 571–72.

We reasoned that, because the purpose of probation revocation proceedings is to determine whether the probationer is complying with the conditions of probation, the state has a strong interest in accurate fact-finding that would be impaired by the application of the exclusionary rule. Id. Against that interest we balanced the deterrent effect of the rule. We concluded that application of the exclusionary rule would have only a marginal deterrent effect. Because there was already a deterrent effect created by the application of the rule to any criminal proceedings, and because the use of evidence in a probation revocation proceeding falls outside a police officer's zone of primary interest, we concluded that "exclusion of such evidence will not significantly affect a police officer's motivation in conducting a search." Id.

We specifically did "not reach the question of whether the exclusionary rule would apply in probation revocation proceedings when the police officer who conducted the search was aware or had reason to be aware of the suspect's probationary status." Id., 573. We stated in dictum that "[i]f illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation hearing might therefore contribute significantly to the deterrence of illegal searches." Id.

The defendant argues, as he did in the Appellate Court, that this dictum should be converted into a holding. He contends that this record demonstrates that Kicak and Guerra knew or had reason to know of his probationary status when they performed the first search, and that, therefore, the dangers contemplated by our dictum in *Payne* require the application of the

exclusionary rule. In such a case, he asserts, unless the exclusionary rule applies, the police have nothing to lose: if the evidence were ruled admissible in criminal proceedings brought against the defendant stemming from the search, he would likely be convicted and incarcerated; if, however, the evidence were suppressed, it could still lead to his incarceration for revocation of probation.

Contrary to the argument of the defendant, however, we conclude that this is not an appropriate case for deciding whether the *Payne* dictum is correct. The presence of a warrant makes this case critically different, and leads us to conclude that this case presents the same balance of interests that we determined in *Payne* did not "favor the application of the exclusionary rule . . . ." Id., 571. Put another way, even if police officers know or have reason to know that the target of their search is on probation, the presence of a warrant sufficiently guards against the risk that, unless the exclusionary rule applies, the officers will not be deterred from performing an illegal search.[3]

We note initially that, unlike criminal trials, in which the exclusionary rule typically applies, in probation revocation hearings, the exclusionary rule typically does not apply. Id. Thus, a probationer has the burden of persuading us that the exclusionary rule should nonetheless apply. The defendant has failed to carry that burden in this case.

Unlike a warrantless search, a search authorized by a warrant presupposes that the officer has persuaded a Superior Court judge that probable cause exists to believe that the defendant has committed a crime and that evidence of that crime exists at the place to be

---

[3] Thus, we need not decide, and therefore continue to leave for another day, whether our dictum in *Payne* v. *Robinson,* supra, 207 Conn. 565, is valid if the search is performed without a warrant.

searched. *State* v. *Johnson*, 219 Conn. 557, 563, 594 A.2d 933 (1991); *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991). Indeed, as *State* v. *Smith*, 207 Conn. 152, 162–69, 540 A.2d 679 (1988), makes clear, the probation process operates as an arm of the judiciary, not of the police or prosecution. We have laid heavy emphasis on the need for protecting the integrity of the warrant-issuing process; see *State* v. *Diaz*, 226 Conn. 514, 628 A.2d 567 (1993); and have, on that ground, eschewed the good faith exception to the exclusionary rule under our state constitution. *State* v. *Marsala*, 225 Conn. 10, 620 A.2d 1293 (1993).

When a police officer seeks a search warrant in this state, therefore, he knows or should know that the validity of his ensuing search will be gauged by the four corners of the documents that he presents in support of his application. We believe that this knowledge, and the necessity of presenting his evidence to the scrutiny of a judge, are sufficient to deter from illegality a police officer who is bent on incarcerating a probationer either by criminal prosecution or by revocation of probation. Thus, the intervention of the warrant-issuing process, which is governed and performed, not by the police officer but by a judge, will ordinarily be sufficient to guard against any substantial risk that "the police officer might . . . discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation." *Payne* v. *Robinson*, supra, 207 Conn. 573.

This risk is further reduced by the fact that the judicial branch form for a search warrant application; JD-CR-61 Rev. 1-89; which was in fact used by Kicak and Guerra in this case, requires the affiant to swear that he "has not presented this application in any other court or to any other judge." Thus, when a warrant is necessary for a search, as in this case, a police officer is

unlikely to present an inadequate search warrant affidavit to a judge simply because he believes that, even if it is denied, he can nonetheless proceed without the warrant and prevail in the revocation proceedings. To do so would necessarily jeopardize, perhaps permanently, the criminal case, which *is* within the officer's " 'zone of primary interest' "; id., 571; in favor of probation revocation proceedings, which are not within that zone.

Cases in other jurisdictions support the conclusion that, for purposes of the application of the exclusionary rule, a warrant sufficiently protects against the risk of police illegality in the context of a probation revocation proceeding. Most federal and state jurisdictions hold that, in general, the exclusionary rule does not apply to probation revocation proceedings. See *Commonwealth* v. *Olsen,* 405 Mass. 491, 541 N.E.2d 1003 (1989), and cases cited therein. In the few cases we have found in those jurisdictions in which the search was performed pursuant to a warrant, the court held the exclusionary rule inapplicable. See *United States* v. *Farmer,* 512 F.2d 160 (6th Cir.), cert. denied, 423 U.S. 987, 96 S. Ct. 397, 46 L. Ed. 2d 305 (1975); *State* v. *Alfaro,* 127 Ariz. 578, 623 P.2d 8 (1980); *Commonwealth* v. *Olsen,* supra, 491.

We need not decide, however, whether the exclusionary rule would nonetheless apply if the search were performed pursuant to a warrant that was so patently defective that no reasonable police officer would have requested it and no reasonable judge would have issued it. It may be that such a circumstance would be the equivalent of egregious, shocking or harassing police misconduct that would require the application of the exclusionary rule to probation revocation proceedings. See *Commonwealth* v. *Olsen,* supra, 405 Mass. 491. This case does not present that factual scenario.

We assume for purposes of this case that the defendant is correct in asserting that the first warrant was defective because General Statutes (Rev. to 1989) § 53a-217, the offense asserted in the first search warrant application, does not list conviction under § 21a-277 as one of the prior offenses that disqualify a person from possessing a firearm. Under this construction of § 53a-217, the defendant's conviction under § 21a-277 was not a valid basis for the issuance of the first warrant, and Kicak and Guerra were mistaken in requesting, and the judge was mistaken in issuing, the warrant.[4]

Nonetheless, the warrant was not so patently defective that no reasonable police officer would have requested it and no reasonable judge would have issued it. Unquestionably, had Kicak, Guerra or the issuing judge, before issuing the warrant, read § 53a-217 carefully and compared the offenses listed therein to the statute under which the defendant had been convicted, namely, § 21a-277, they would have discovered that issuance of the warrant was problematic. In a criminal prosecution, failure to discover and to resolve this problem correctly would have required suppression of the evidence. In the present circumstances, however, we cannot say that it was patently unreasonable or egregious to have assumed, without checking the statutes, that one who has been convicted of the felony of possession of marijuana with the intent to sell was legally disqualified from owning a firearm.

The facts of this case demonstrate, moreover, that, despite the legal invalidity of the first warrant, and con-

---

[4] The state argues in response that, although the warrant may have been technically defective and thus would have been a valid basis for a motion to suppress in a criminal prosecution, the warrant was not invalid for purposes of a revocation proceeding because such a search warrant aimed at a probationer may issue on less than probable cause. Our conclusion that the exclusionary rule does not apply despite the invalidity of the warrant makes it unnecessary to consider this argument.

trary to the defendant's assertion that the invalidity evidenced the officers' pretextual motive, the police officers' course of conduct appears to have constituted an attempt to respect the defendant's constitutional rights. Approximately four months after the imposition of the defendant's probationary status for possession of marijuana with intent to sell, the police learned that he was in possession of a firearm for which his permit had been revoked. Instead of returning to his residence to search for the weapon on the basis of his probationary status, they sought and secured a search warrant from a Superior Court judge. While executing that warrant, they discovered marijuana in plain view in the defendant's bedroom. Again, instead of seizing the marijuana based upon a "plain view" of contraband exception to the warrant requirement, they sought and secured a second warrant from a judge.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., KATZ and M. HENNESSEY, Js., concurred.

BERDON, J., concurring. I concur in the result. I agree with the majority that it is best to leave to another day whether the exclusionary rule applies to a warrantless search where the officers knew or had reason to know that the defendant was on probation; and whether the rule applies to a search predicated on a warrant "so patently defective that no reasonable police officer would have requested it and no reasonable judge would have issued it."