[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SUPPRESS TANGIBLE EVIDENCE
 PROCEDURAL BACKGROUND
The State of Connecticut has brought a proceeding for violation of probation against the defendant, Tracy Merritt. The alleged violation is brought pursuant to a Payne
warrant. The issue is whether the exclusionary rules, prohibiting the admission of evidence discovered pursuant to a search conducted without probable cause, apply to a violation of probation proceeding.
In the trial court proceeding in State v. Jacobs,229 Conn. 385 (1994), Judge Scheilman refused to hold an evidentiary hearing on the defendant's Motion to Suppress evidence in a violation of probation proceedings. On appeal, Judge Scheilman's actions in not holding a hearing as well as his refusal to exclude the evidence, were affirmed.
At the court's invitation, the defendant in the instant case submitted a proposed findings of fact. The court adopted those findings of fact for the sole purpose of evaluation of the Motion to Suppress. The court had informed counsel that if the Motion to Suppress were available as a matter of law under this set of facts, the court would then hold an evidentiary hearing.
The court concludes that under the facts of this case a motion to suppress for lack of probable cause to search is not available in a violation of probation hearing. The motion to suppress is denied.
 FACTS
For the sole purpose of this proceeding the court adopts the defendant moving party's proposed findings of fact. Those findings are as follows:
1. The defendant signed conditions of his probation in approximately January of 1996;
2. The defendant was arrested by Hartford police officer Jose Santiago, in early 1996 while on probation and entered a plea of CT Page 14727 guilty to a narcotics related charge on or about February 27, 1996. The defendant was not charged with a violation of probation as a result of this arrest and plea and was continued on probation;
3. Officer Santiago knew prior to or learned at the time of his arrest of the defendant in early 1996 that the defendant was then on probation;
4. In the evening hours of June 3, 1996, Ms. Sheila Howe of 93 Mansfield Street in Hartford asked the defendant to purchase some cigarettes for her;
5. Later that evening the defendant drove a motor vehicle to the front of 93 Mansfield Street in Hartford and exited his motor vehicle, leaving the motor running;
6. The defendant was carrying a cigarettes in one hand and beer in the other and proceeded to walk to the front of 93 Mansfield Street;
7. The defendant intended to deliver the cigarettes and beer to Sheila Howe, who was sitting on her front porch;
8. When the defendant reached the front porch a Hartford police cruiser pulled up behind the defendant's motor vehicle;
9. Officer Jose Santiago exited the police cruiser and called the defendant by name and told him to come to his cruiser;
10. At this moment and at all times thereafter Officer Santiago knew the defendant by name and knew that the defendant was on probation;
11. When the defendant reached Officer Santiago he was patted down and subsequently handcuffed. No contraband was found on the defendant at this time;
12. Officer Santiago placed the defendant in his cruiser and used his police radio. Shortly thereafter several other cruisers arrived at the 93 Mansfield Street location;
13. The police cruisers, including the one in which the defendant was a passenger, left 93 Mansfield Street and proceeded to Vine Street which was a short distance away; CT Page 14728
14. The defendant was removed from the police cruiser while remaining handcuffed and was strip searched on a public street;
15. The defendant's pants were lowered and as a result of a search of his rectal cavity a bag alleged to contain contraband was removed therefrom;
16. The defendant was placed under arrest for possession of narcotics and possession of narcotics with intent to sell and was brought to the Hartford Police headquarters for booking;
17. On a date subsequent to this arrest a violation of probation warrant was served on the defendant by the aforesaid Officer Jose Santiago; and
18. The basis of said violation of probation was the defendant's arrest on June 4, 1996.
 DISCUSSION
The instant case presents the question of whether or not the exclusionary rules apply, and if so under what circumstances, in violation of probation proceedings.
In Connecticut, the general rule is that the exclusionary rule is not applicable to probation revocation hearings,Payne v. Robinson, 207 Conn. 565, Cert.denied 488 U.S. 498 (1988), State v. Jacobs,229 Conn. 385, 390 (1994).
In Payne v. Robinson, the Supreme Court wrote:
 The purpose of probation revocation proceedings is to determine whether a probationer is complying with the conditions of his probation . . . in such proceedings, the government has an interest in accurate fact finding that is likely to be impaired when otherwise reliable and relevant evidence is excluded from the proceeding. Against this interest, we must balance the deterrent effect that may result from applying the exclusionary rule to probationary hearings . . . application of the [exclusionary] rule would at best achieve only a marginal deterrent effect."
Payne v. Robinson at 571. CT Page 14729
In Payne the defendant was on probation but the officer who conducted the warrantless search of his car was unaware of the defendant's status as a probationer. Since the officer who conducted the search was unaware of the probationary status the Supreme Court held: "In that context . . . the Fourth Amendment exclusionary rule did not apply."
 Where there is no evidence that the police officer was aware that the suspect was on probation, further exclusion of such evidence in a probation revocation hearing would not appreciably enhance the deterrent effect already created by the inadmissability of the evidence at trial. Since the use of evidence in a probation revocation hearing "falls outside the offending officer's zone of primary interest" [citation omitted]; exclusion of such evidence will not significantly effect the police officer's motivation in conducting a search.
Payne v. Robinson, supra, at 571.
Simply stated, the offending officer in Payne did not know that the defendant was on probation. In Jacobs the court never decided whether the officer knew that Jacobs was on probation, but the officer involved had a warrant from a magistrate. The court found that the exclusionary rule did not apply in a revocation of probation proceeding where the officer had a warrant.
The difficulty in the instant case results from dictum in thePayne decision where the court held:
 We do not reach the question of whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation hearing might therefore contribute significantly to the deterrence of illegal searches.
Payne v. Robinson, supra, at 573. Six years later, in State v.Jacobs the court again subscribed to its dictum in Paynev. Robinson.
Numerous state and federal decisions have considered the CT Page 14730 issue and culminated in the United States Supreme Court decision in Pennsylvania Board of Probation and Parole, Petitioner v.Keith M. Scott, 63 Law Week No. 13, Page 365 (1998). The Pennsylvania Supreme Court fashioned a special rule for those situations in which the officer performing the search knew that the subject of his search was a parolee.
The Supreme Court of the United States reversed, pointing out that the use of evidence obtained in violation of the Fourth Amendment is not a violation of the Constitution, UnitedStates v. Leon, 468 U.S. 897, 906 (1984). The exclusionary rule is instead a judicially created means of deterring illegal searches and seizures, United States v. Colandra,414 U.S. 338 (1974). The exclusionary rule does not prescribe the introduction of illegally seized evidence in all proceedings or against all persons.
The majority opinion in Scott goes on to examine situations where the Supreme Court has refused to extend the exclusionary rule to proceedings other than criminal trials. The rule has not been applied to Grand Jury proceedings, United States v.Colandra, 414 U.S. 338 (1974), civil tax proceedings,United States v. Janis, 428 U.S. 433, or civil deportation proceeding, INS v. Lopez-Mendoza,468 U.S. 1032 (1984).
Both Payne and Jacobs were analyzed by our Supreme Court in terms of the Fourth Amendment to the Federal Constitution. In neither case did the dictum speculate the possibility of a state remedy in violation of parole proceeding. The existence of a state remedy has not been argued in the instant case. This court is not called upon to decide whether the defendant, in a violation of probation proceedings, has any rights under the state constitution.
The court also notes that in Scott the United States Supreme Court was dealing with a revocation of parole, whereas in the instant case, the court is dealing with a violation of probation. Under our procedures, revocation of parole is an administrative procedure while violation of probation is a court proceeding. Notwithstanding the fact the violation of probation is a court proceeding, it imposes a lower standard of proof on the state, which must only prove the violation "by reliable and probative evidence" State v.Davis, 229 Conn. 285 (1994). In the same decision the CT Page 14731 Supreme Court stated that to satisfy the standard "the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. Id. at 302. The standard for violation of probation is satisfied if the trial court has a rational belief that the evidence induced is adequate or sufficient to prove a violation."State v. Davis, 29 Conn. 801, 805, cert.granted 225 Conn. 918 (1993). This court recognizes that Scott may be distinguishable from the present case because defendant Scott was accused of violation of parole while defendant Merritt is accused of violation of probation. However, the majority of the united States Supreme Court inScott wrote as follows:
 Parole is a variation on imprisonment of convicted criminals, Morrissey v. Brewer, 408 U.S. 471, 477 (1972), in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and condition of his release. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements. The State thus has an "overwhelming interest" in ensuring that a parolee complies with those requirements and is returned to prison if he fails to do so [citation omitted]. The exclusion of evidence establishing a parole violation, however, hampers the State's ability to ensure compliance with these conditions by permitting the parolee to avoid the consequences of his noncompliance. The cost of allowing a parolee to avoid the consequences of his violation are compounded by the fact that parolees (particularly those who have already committed parole violations) are more likely to commit future criminal offenses than are average citizens [citations omitted]. Indeed, this is the very premise behind the system of close parole supervision.
The majority in Scott went on to hold:
 Where the person conducting the search is a police officer, the officer's focus is not upon ensuring compliance with parole conditions or obtaining evidence for introduction at administrative proceedings, but upon obtaining convictions of those who commit crimes.
Not withstanding the arguable distinction between CT Page 14732 an administrative parole violation hearing and a judicial probation violation hearing, the underlying rationale of the united States Supreme Court in Scott appears to be contained in the following quotation:
 Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: it undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions [citation omitted]. Although we have held these costs to be worth bearing in certain circumstances, our cases have repeatedly emphasized that the rules' "costly toll" upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule. united States v. Payner, 447 U.S. 727, 734 (1980).
Notwithstanding the procedural differences between a state violation of probation hearing and a state revocation of parole proceeding, Connecticut clearly treats a violation of probation hearing as entitling the defendant to something less than the full guarantees extended to the defendant at a criminal trial. Under ordinary circumstances, it is clear that the defendant does not get the benefit of the exclusionary rule, nor does the defendant get the benefit of proof beyond a reasonable doubt. This court concludes that there is not sufficient differences in the underlying purpose of parole and probation to distinguish one from the other for purposes of the application of the exclusionary rules.
While recognizing that our Supreme Court's decision in bothPayne v. Robinson and State v. Jacobs may support the conclusion, under the facts assumed by the court, that the exclusionary rules apply; the court holds, with respect to Fourth Amendment rights, that the dicta in Payne and in Jacobs is effectively rendered less persuasive by the united States Supreme Court opinion in Scott.
For the foregoing reasons the court holds that the exclusionary rules do not apply, under the facts before it, to a violation of probation proceeding. The motion to suppress tangible evidence is denied.
THE COURT CT Page 14733
KEVIN E. BOOTH, J.