STATE OF CONNECTICUT *v.* ROBERT S. FOSTER
(SC 16253)

McDonald, C. J., and Borden, Palmer, Sullivan and Zarella, Js.[1]

---

[1] Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 17—officially released October 30, 2001

*Dean E. Popkin*, with whom, on the brief, was *Robert Berke*, for the appellant (defendant).

*Eileen McCarthy Geel*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Nicholas J. Bove, Sr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, C. J. The sole issue raised in this appeal is whether, under article first, § 7, of the constitution of Connecticut,[2] the trial court properly did not apply the exclusionary rule in a probation violation hearing. We answer that question in the affirmative and, therefore, affirm the judgment of the trial court.

The following facts are relevant to this issue. On April 15, 1997, the defendant, Robert S. Foster, was convicted of the sale of a controlled substance in violation of

---

[2] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

General Statutes § 21a-277 (b),[3] for which he was sentenced to a term of five years imprisonment, execution suspended, with three years of probation. One of the conditions of the defendant's probation was that he not possess narcotics, drugs or controlled substances.

Subsequently, on April 16, 1998, the defendant was arrested and charged with additional drug-related offenses. While the defendant was awaiting trial on these charges, the state, pursuant to General Statutes § 53a-32,[4] charged him with violating the conditions of

[3] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[4] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving such officer a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of the defendant's probation. . . . Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon . . . the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation or conditional discharge. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless

his probation. The record discloses that the following uncontested facts regarding the arrest were presented to the trial court: "On April [16], 1998, a Connecticut [s]tate [p]olice [o]fficer executing a warrant for David Bailey at 22 Calhoun Avenue, entered the residence through a door that was ajar. Upon entry, they observed . . . [the defendant] and the co-defendant exchanging [some] money. One of the officers observed . . . [the defendant] toss a plastic bag filled with [a] green plant-like substance onto the television set. A second warrant was sought and executed to conduct further search of the property. The following items were [found]: 1. $350 in cash. 2. A brown paper bag containing $3735. 3. A large plastic . . . bag containing a green plant like substance. 4. One brown paper bag containing $2956. . . ."

At the hearing on the probation violation, the defendant moved to suppress the seized items, relying on article first, § 7, of the constitution of Connecticut. The trial court denied that motion. Thereafter, the defendant pleaded nolo contendere to the violation of probation charge conditioned upon his right to appeal.

On appeal, the defendant claims that the trial court improperly refused to apply the exclusionary rule under article first, § 7, of the constitution of Connecticut. We disagree and, accordingly, affirm the judgment of the trial court.[5]

In our consideration of whether to extend the protection provided by the Connecticut constitution beyond

such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[5] The state argues that the defendant cannot challenge the seizure of evidence from Bailey's apartment because he has failed to establish that he had a legitimate expectation of privacy in that apartment. See *State* v. *Hill*, 237 Conn. 81, 96, 675 A.2d 866 (1996). Because we will assume, as the defendant represented to the trial court, that he was a resident of the apartment, we reject this argument.

that afforded by the United States constitution, we may take into account several factors: the text of the relevant constitutional provisions; holdings and dicta of Connecticut appellate courts; federal precedent; sister state decisions; the historical approach, including the historical constitutional setting and the debates of the framers; and economic and sociological considerations. See *State* v. *Geisler*, 222 Conn. 672, 685–86, 610 A.2d 1225 (1992).

The defendant concedes that a textual analysis provides no support for his argument. The history of the exclusionary rule in Connecticut also does not support the defendant's claim, for "[u]ntil the United States Supreme Court's decision in *Mapp* v. *Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, reh. denied, 368 U.S. 871, 82 S. Ct. 23, 7 L. Ed. 2d 72 (1961), Connecticut courts did not exclude unconstitutionally seized evidence. . . . The *Mapp* decision abrogated our prior law that relevant evidence, although obtained by unreasonable search and seizure in violation of the federal constitution, was admissible in evidence in our state courts. . . . It was not until our decision in *State* v. *Dukes*, 209 Conn. 98, 115, 547 A.2d 10 (1988), that we concluded that article first, § 7, of the Connecticut constitution requires the exclusion of unconstitutionally seized evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Diaz*, 226 Conn. 514, 535 n.13, 628 A.2d 567 (1993).

As for federal precedent, in *Pennsylvania Board of Probation & Parole* v. *Scott*, 524 U.S. 357, 364, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998), the United States Supreme Court concluded that the exclusionary rule under the fourth amendment does not apply in a revocation of parole proceeding. The court reasoned: "Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revoca-

tion proceedings. The rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches. . . .

"Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions. . . . Although we have held these costs to be worth bearing in certain circumstances, our cases have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule." (Citation omitted; internal quotation marks omitted.) Id., 364–65. "The costs of excluding reliable, probative evidence are particularly high in the context of parole revocation proceedings. Parole is a variation on imprisonment of convicted criminals . . . in which the [s]tate accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release. In most cases, the [s]tate is willing to extend parole only because it is able to condition it upon compliance with certain requirements. . . . The exclusion of evidence establishing a parole violation . . . hampers the [s]tate's ability to ensure compliance with these conditions by permitting the parolee to avoid the consequences of his noncompliance. The costs of allowing a parolee to avoid the consequences of his violation are compounded by the fact that parolees (particularly those who have already committed parole violations) are more likely to commit future criminal offenses than are average citizens. . . . Indeed, this is the very premise behind the system of close parole supervision." (Citations omitted; internal quotation marks omitted.) Id., 365. The

court concluded that, with respect to a parole revocation hearing, "[t]he deterrence benefits of the exclusionary rule would not outweigh these costs." Id., 367.

This court's precedents also support the conclusion that, under the circumstances in the present case, the exclusionary rule under article first, § 7, is inapplicable.

In *Payne* v. *Robinson*, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), we concluded that, under the fourth amendment to the United States constitution, the exclusionary rule generally does not apply to probation revocation hearings. In *Payne*, the petitioner had filed a habeas corpus petition challenging the validity of the revocation of his probation, which was based upon evidence gathered from a warrantless search of his car. Id., 567–68. The petitioner was on probation at the time of the search, but the officer conducting the search had no knowledge of the probationary status. Id., 571.

We held that the exclusionary rule did not apply, reasoning as follows: "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . . Application of the rule is thus appropriate in circumstances in which this purpose is likely to be furthered. . . . Under this approach, we must weigh the potential injury to the probation revocation process from the exclusion of relevant evidence against the potential benefits of the rule as applied in this context. . . .

"The purpose of probation revocation proceedings is to determine whether a probationer is complying with the conditions of his probation. . . . In such proceedings, the government has an interest in accurate fact-finding that is likely to be impaired when otherwise

reliable and relevant evidence is excluded from the proceeding. . . . Against this interest, we must balance the deterrent effect that may result from applying the exclusionary rule to probation [revocation] hearings under the facts of this case." (Citations omitted; internal quotation marks omitted.) Id., 570–71.

In *Payne*, we concluded that "application of the rule would at best achieve only a marginal deterrent effect. Illegally obtained evidence is inadmissible in a criminal trial. . . . Where, as here, there is no evidence that the police officer was aware that the suspect is on probation, further exclusion of such evidence in a probation revocation hearing would not appreciably enhance the deterrent effect already created by the inadmissibility of the evidence at trial. Since the use of evidence in a probation revocation hearing falls outside the offending officer's zone of primary interest . . . exclusion of such evidence will not significantly affect a police officer's motivation in conducting a search." (Citations omitted; internal quotation marks omitted.) Id., 571.

In *State* v. *Jacobs*, 229 Conn. 385, 387–88, 641 A.2d 1351 (1994), officers obtained a warrant to search the defendant's apartment, and evidence gathered from that search was admitted at his revocation of probation hearing. The defendant, relying on *Payne* v. *Robinson*, supra, 207 Conn. 573,[6] argued, under the fourth amend-

---

[6] In *Payne* v. *Robinson*, supra, 207 Conn. 573, we stated that "in holding that the exclusionary rule does not apply to this case, we do not reach the question of whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation [revocation] hearing might therefore contribute significantly to the deterrence of illegal searches."

The United States Supreme Court later rejected such an exception in *Pennsylvania Board of Probation & Parole* v. *Scott*, supra, 524 U.S. 367–68

ment, that because the officers either knew, or should have known, of the defendant's probationary status and because the warrants were defective, the fruits of the search should have been excluded in that hearing. *State v. Jacobs*, supra, 389–90. We concluded that "this is not an appropriate case for deciding whether the *Payne* dictum is correct. The presence of a warrant makes this case critically different, and leads us to conclude that this case presents the same balance of interests that we determined in *Payne* did not favor the application of the exclusionary rule . . . . Put another way, even if police officers know or have reason to know that the target of their search is on probation, the presence of a warrant sufficiently guards against the risk that, unless the exclusionary rule applies, the officers will not be deterred from performing an illegal search." (Citation omitted; internal quotation marks omitted.) Id., 392.

In *Jacobs*, we specifically did not decide "whether the exclusionary rule would nonetheless apply if the search were performed pursuant to a warrant that was so patently defective that no reasonable police officer would have requested it and no reasonable judge would have issued it. It may be that such a circumstance would be the equivalent of egregious, shocking or harassing police misconduct that would require the application of the exclusionary rule to probation revocation proceedings. . . . This case does not present that factual scenario." (Citation omitted.) Id., 394.

As in *Jacobs*, the search in the present case was made pursuant to a search warrant and does not present itself as one of egregious, shocking or harassing police

("The Pennsylvania Supreme Court thus fashioned a special rule for those situations in which the officer performing the search knows that the subject of his search is a parolee. We decline to adopt such an approach. We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.").

misconduct. The search warrant was obtained after the state police, acting pursuant to an arrest warrant for Bailey, observed the defendant and Bailey engaged in a drug transaction. Furthermore, the defendant does not contest the legality of that search warrant.[7] Moreover, the defendant made no offer of proof that the state police who discovered the evidence and executed the search warrant knew that he was on probation at the time. If the police were unaware of the defendant's status, application of the exclusionary rule would provide no additional deterrence against illegal searches allegedly performed because he was on probation. *Payne* v. *Robinson*, supra, 207 Conn. 571. We therefore conclude that the present case, like *Jacobs*, does not require us to decide if a patently defective warrant or serious police misconduct would justify the application of the exclusionary rule.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] The nature of the defendant's challenge to the search and seizure was not made clear in the motion to suppress, in the arguments of his counsel at the probation revocation proceeding or in his brief.

