******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOHN MAIETTA
(SC 19524)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 16, 2015—officially released March 15, 2016*

*Sandra J. Crowell*, senior assistant public defender, with whom, on the brief, were *Martin Zeldis*, former public defender, and *Jacob Pezzulo*, certified legal intern, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Christian Watson*, assistant state's attorney,

for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, John Maietta, appeals from the trial court's finding that he violated his probation pursuant to General Statutes § 53a-32. On appeal the defendant argues that: (1) the trial court improperly admitted evidence obtained in violation of the fourth and fourteenth amendments to the United States constitution and the separation of powers doctrine; (2) the evidence is insufficient to demonstrate that he violated his probation; (3) the trial court's evidentiary rulings on hearsay evidence were an abuse of discretion and deprived him of his due process rights to confront witnesses and to present a defense; and (4) the condition of his probation making him ineligible to possess firearms violates the second amendment to the United States constitution. We conclude that the defendant cannot prevail on any of his claims, and, accordingly, we affirm the judgment of the trial court.

The following facts, as found by the trial court, are relevant to the resolution of this appeal. Following a complaint to the police by the defendant's former girlfriend, D,[1] the defendant was arrested in April, 2012, and charged with, inter alia, harassment in the second degree in violation of General Statutes § 53a-183 and criminal trespass in the first degree in violation of General Statutes § 53a-107. On September 26, 2012, the defendant, pursuant to a plea agreement, pleaded guilty to both of those charges and was sentenced to one year incarceration, execution suspended, and two years of probation. Under the terms and conditions of his probation, the defendant was required to submit to searches by his probation officer on reasonable suspicion and to comply with a standing criminal protective order that prohibited the defendant from contacting D and from possessing firearms. The defendant met with probation officers on both October 1 and 11, 2012, to review the conditions of his probation. At the first of these meetings, the defendant completed and signed a "Firearms Compliance Statement" in which he acknowledged that he was ineligible to possess firearms and asserted that he currently did not possess or have access to any firearms. A subsequent search of the state police firearms database (database) by the defendant's probation officer revealed that there were two firearms then registered in the defendant's name. The defendant had reported one firearm stolen to the New Britain Police Department and had surrendered the other firearm to the Newington Police Department two years prior to his arrest.

On October 25, 2012, D contacted Robert Moreau, a probation officer with the Court Support Services Division (adult probation services), and informed him that she was concerned for her personal safety because she believed that the defendant was in possession of firearms. D told Moreau that the defendant took posses-

sion of several of his father's guns when the defendant was appointed his father's conservator in 2009. The defendant's father died shortly thereafter. D also relayed to Moreau that the defendant had told her that he kept a gun in a garage he rented in Newington. After speaking with D, Moreau searched for the defendant's father's name in the database and discovered that there were three firearms still listed as registered to the defendant's father: a Smith & Wesson .38 caliber handgun, an Arcadia Machine & Tool .380 caliber handgun, and a Harrington & Richardson .22 caliber handgun (Harrington handgun).

Moreau contacted Detective Barbara Mattson of the state Department of Emergency Services and Public Protection (department) who confirmed that the three handguns were still registered in the name of the defendant's father. Mattson also informed Moreau that in 2009, when the defendant's father had been involuntarily conserved, the predecessor to the department had informed the defendant's father that he was ineligible to possess firearms. State police records confirmed that the defendant was appointed his father's conservator on March 16, 2009, and that the Harrington handgun had been transferred to the defendant. The records did not indicate that that particular gun was ever registered in the defendant's name. On this information, Moreau received approval from his superiors in adult probation services to undertake a planned probationary search of the defendant's garage in Newington. In accordance with the policy of adult probation services, Moreau received the assistance of Inspectors Michael Sullivan and Jay St. Jacques of the Office of the Chief State's Attorney, certain members of the Greater New Britain Shooting Task Force, and an officer with the Berlin Police Department (collectively, search team).

On November 1, 2012, Moreau, accompanied by three other probation officers and the other members of the search team, traveled to the defendant's apartment in New Britain to first locate the defendant prior to initiating the planned search of the Newington garage. Upon arriving at the defendant's apartment, Moreau rang the doorbell and asked the defendant whether he had any firearms at that location. The defendant denied possessing any firearms at his apartment and allowed the probation officers into his apartment to search the immediate area for guns. When Moreau asked the defendant if he possessed any of his father's firearms, he first indicated that he did not but later stated that there might be a gun stored within a dresser drawer at the Newington garage. The defendant agreed to a search of the garage and voluntarily accompanied Moreau to the site.

After arriving at the Newington garage, the defendant opened the building with his personal key and allowed Moreau and the other members of the search team

inside. The defendant directed Moreau to a side room where the dresser allegedly containing the gun was located and indicated a particular dresser among several in the room. When the probation officers opened the drawer of the dresser that the defendant had identified, they located a Harrington & Richardson .22 caliber handgun. The serial number on that gun matched that of the Harrington handgun that was registered to the defendant's late father. The defendant was thereafter charged with criminal possession of a weapon pursuant to General Statutes (Rev. to 2011) § 53a-217 and with violation of a standing criminal protective order pursuant to General Statutes (Rev. to 2011) § 53a-223a. Subsequently, the defendant was charged with violating the conditions of his probation.

The defendant's violation of probation hearing was held on several days throughout August and November, 2013. On August 9, 2013, the trial court denied the defendant's motion to dismiss, rejecting his claim that a condition of his probation infringed on his second amendment right to bear arms. The defendant then moved to suppress the Harrington handgun and his verbal statements to Moreau and the other members of the search team. On November 7, 2013, the trial court denied the defendant's motions to suppress, finding that the exclusionary rule is inapplicable in probation revocation hearings and, that even if it were to apply in the defendant's case, he had consented to the search both at the time it was executed and when he agreed to the conditions of his probation. In regard to the defendant's verbal statements, the trial court reiterated that the exclusionary rule was inapplicable and that, even if it were applicable, the defendant was not in custody when he made the statements. On that same day, the trial court found that the defendant violated the conditions of his probation. On November 19, 2013, the trial court continued the defendant's probation and added new conditions. The defendant appealed to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional facts will be set forth as necessary.

The defendant first argues that the searches of his apartment and garage were conducted for law enforcement, not probationary, purposes, and that the trial court therefore erred in not applying the exclusionary rule to suppress the evidence. Additionally, the defendant suggests that the presence of members of the Greater New Britain Shooting Task Force at the search violates the separation of powers doctrine. In response, the state notes that the exclusionary rule is inapplicable to probation revocation proceedings and that the defendant lacks standing to present a separation of powers claim, or alternatively, that the trial court's findings preclude such a claim. As the exclusionary rule is indeed inapplicable to probation revocation proceed-

ings and the record precludes the defendant's separation of powers claim, we conclude that the trial court properly admitted the Harrington handgun and the defendant's statements into evidence.

In reviewing a trial court's decision on a motion to suppress, "[a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary] . . . ." (Internal quotation marks omitted.) *State* v. *Kalphat*, 285 Conn. 367, 374, 939 A.2d 1165 (2008). It is a well settled tenet of our fourth amendment jurisprudence that "unlike criminal trials, in which the exclusionary rule typically applies, in probation revocation hearings, the exclusionary rule typically does not apply." *State* v. *Jacobs*, 229 Conn. 385, 392, 641 A.2d 1351 (1994); see also *State* v. *Foster*, 258 Conn. 501, 507, 782 A.2d 98 (2001); *Pennsylvania Board of Probation & Parole* v. *Scott*, 524 U.S. 357, 364, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998). We have observed that the exclusionary rule would only provide a " 'marginal deterrent' " to illegal police activity in the probation context; *State* v. *Foster*, supra, 508; given that, in probation revocation proceedings "the government has an interest in accurate fact-finding that is likely to be impaired when otherwise reliable and relevant evidence is excluded from the proceeding." (Internal quotation marks omitted.) Id., 507–508. Likewise, we recognize that probationers have "a diminished expectation of privacy by virtue of [their probationary status] . . . ." *State* v. *Smith*, 207 Conn. 152, 166, 540 A.2d 679 (1988). Our bar on the application of the exclusionary rule to probation revocation proceedings is not absolute, however, as " 'egregious, shocking or harassing police misconduct' " would warrant our application of the rule to such probation proceedings. *State* v. *Foster*, supra, 509.

In the present case, the defendant offers no compelling reasons as to why the exclusionary rule should apply under the circumstances of his case. The defendant attempts to circumvent the inapplicability of the exclusionary rule by claiming that the probation search conducted by Moreau and his search team was in actuality a thinly veiled law enforcement search orchestrated by the police. The trial court's findings, however, plainly belie the defendant's argument. The searches of the defendant's apartment and the garage were planned probationary searches organized under the auspices of adult probation services. Contrary to the defendant's characterization of the searches, the trial court specifically found that Moreau was "acting in his capacity as a probation officer" when he conducted the searches and questioned the defendant. The trial court specifically found that the searches were conducted by the probation officers and *not* the law enforcement personnel who were present. Indeed, nothing in the underlying record indicates that Moreau and the other probation

officers were conducting the searches at the behest of the police or for reasons other than to ensure that the defendant was in compliance with the terms of his probation. As the trial court noted, because probation officers are unarmed, probation policy requires police officers to accompany probation officers on searches for safety reasons.

Furthermore, the present case contains no " 'egregious, shocking or harassing police misconduct' " that would merit the application of the exclusionary rule. *State* v. *Foster*, supra, 258 Conn. 509. The trial court found that there was "no evidence that the defendant was restrained in any way . . . [or] that force was used. There was no evidence of overbearing conduct, coercions or duress of any kind. There was no pushing, arguing, or harassing the defendant." Rather, the record shows that the defendant voluntarily allowed Moreau and his search team into his apartment and the garage and cooperated with the searches. Accordingly, the defendant's argument that the exclusionary rule should apply to the present case is unpersuasive, and we conclude that the trial court properly admitted the Harrington handgun and the defendant's verbal statements into evidence.[2]

We briefly observe that the defendant's claim that the searches violated the separation of powers doctrine[3] is unavailing. Essentially, the defendant argues that the searches of his apartment and the garage run afoul of the separation of powers doctrine because Moreau and Sullivan are members of the Greater New Britain Shooting Task Force, a coordinated effort between adult probation services, a subset of the Judicial Branch, and various members of the police community, a subset of the executive branch. In the defendant's view, the police dragooned adult probation services into performing the searches and therefore usurped adult probation services' independent authority as a division of the Judicial Branch. The record is utterly devoid of support for this argument. As the trial court correctly noted, Moreau was acting in his official capacity as a probation officer during the searches and there is no evidence that he was acting as a member of the Greater New Britain Shooting Task Force. See *State* v. *Cruz*, 260 Conn. 1, 14, 792 A.2d 823 (2003) (rejecting argument that presence of police converted nonpolice personnel into law enforcement agent). Additionally, the absolutist view of the separation of powers that the defendant espouses, in which two branches may not cooperate in the pursuit of a mutual goal, has no support in our case law. Conversely, we have recognized that the three powers of our state government often overlap and have shared objectives and that as a result "the separation of powers doctrine cannot be applied rigidly." *Bartholomew* v. *Schweizer*, 217 Conn. 671, 676, 587 A.2d 1014 (1991). To hold otherwise "would result in the paralysis of government." (Internal quotation marks omitted.)

*Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 552, 663 A.2d 317 (1995); see *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 597, 858 A.2d 709 (2004).

Having determined that the trial court properly admitted the Harrington handgun and the defendant's verbal statements into evidence, we turn to the defendant's claim that the evidence was itself insufficient to establish that he violated his probation. In reviewing the sufficiency of evidence, "[a]ll that is required in a probation violation proceeding is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation. . . . [A] challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 26–27, 31 A.3d 1063 (2011).

We conclude that the evidence adduced at the hearing was sufficient for the trial court to determine that the defendant violated the terms of his probation. The evidence reveals that, following his guilty plea on September 26, 2012, the defendant reviewed and signed the terms and conditions of his probation, thereby manifesting his understanding of the necessity to abide by those conditions. The defendant subsequently reviewed the conditions of his probation with a probation officer on both October 1 and 11, 2012. One of the conditions of the defendant's probation required him to comply with the court's standing criminal protective order of September 26, 2012, which barred him from contacting D or possessing any firearms. The defendant had signed a state police "Firearm Compliance Statement," reiterating his understanding that he could not possess firearms and representing that he currently did not possess or have access to any firearms as of October 1, 2012. In signing the statement, the defendant agreed to transfer or surrender any firearms in his possession within two business days. Despite being in possession of his father's Harrington handgun since at least 2009, the defendant did not surrender this firearm. Rather, during the November 1, 2012 search when Moreau asked the defendant if he possessed any guns, the defendant was able to articulate precisely where the Harrington handgun was stored, and the probation officers ultimately located the gun exactly where the defendant indicated it would be. On the basis of this evidence, we cannot say that it was clearly erroneous for the trial court to conclude that the defendant violated his probation by

not complying with the condition that he abide by the criminal protective order prohibiting him from possessing firearms.

We briefly address the defendant's remaining claims. First, the defendant alleges that the trial court abused its discretion when it allowed Moreau and Mattson to testify to a statement made by a sergeant with the New Britain Police Department regarding the purported record of transfer of the Harrington handgun from the defendant's father to the defendant. The defendant moved to strike this testimony as hearsay and the trial court denied the defendant's motion. The defendant further argues that the trial court abused its discretion in not allowing into evidence a memorandum that, the defendant claims, would have rebutted Moreau's and Mattson's hearsay testimony. The defendant purports that these rulings denied him the right to present a defense.

We note at the outset that the rules of evidence do not apply to probation revocation hearings and, thus, relevant hearsay evidence is admissible at the discretion of the trial court. Conn. Code Evid. § 1-1 (d) (4); see *State* v. *White*, 169 Conn. 223, 239–40, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975); *State* v. *Quinones*, 92 Conn. App. 389, 392, 885 A.2d 227 (2005), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006). The hearsay evidence at issue in the present case was corroborated by D's testimony that the defendant had received his father's guns and the physical evidence of the Harrington handgun itself. The hearsay statement was therefore reliable, and the trial court did not abuse its discretion in allowing it into evidence. See *State* v. *William C.*, 267 Conn. 686, 700–701, 841 A.2d 1144 (2004) (evidentiary rulings of trial court reviewed for abuse of discretion). Likewise, the trial court's rejection of the defendant's offer of a memorandum allegedly rebutting the hearsay statement did not deprive the defendant of his ability to present a defense. The memorandum, written by William Durkin, an investigator with the State's Attorney's Office in New Britain, for Christian Watson, an assistant state's attorney in that office, described the transfer history of the Harrington handgun in relation to the defendant. The record reveals that the trial court did not allow the defendant to enter the memorandum into evidence as a full exhibit for the dual reasons that it was an internal state memorandum made in connection with a case investigation and, therefore, not subject to disclosure pursuant to Practice Book § 40-14 (1), and that the defendant's witness, Paul Farley, an inspector from the Office of the Public Defender, did not have sufficient familiarity with the document to introduce it and attest to its authenticity. The trial court, however, allowed the defendant to question Farley on the contents of the memorandum, and the trial court's decision excluding the memorandum itself from evidence cannot be said

therefore to have deprived the defendant of his right to present a defense. See *State* v. *Andrews*, 313 Conn. 266, 276, 96 A.3d 1199 (2014) (primary consideration in whether defendant deprived of right to present defense is centrality of excluded evidence to defendant's claim).

Finally, the defendant advances the novel argument that the condition of his probation barring him from possessing firearms contravenes the second amendment right to bear arms. The second amendment to the United States constitution guarantees to citizens "the individual right to possess and carry weapons in case of confrontation"; *District of Columbia* v. *Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008); although that right is "not unlimited . . . ." Id., 595; *State* v. *DeCiccio*, 315 Conn. 79, 109, 105 A.3d 165 (2014). Specifically, the second amendment does not prevent "[long-standing] prohibitions on the possession of firearms . . . ." *District of Columbia* v. *Heller*, supra, 626; *McDonald* v. *Chicago*, 561 U.S. 742, 786, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (Alito, J.).

We conclude, however, that the defendant waived his second amendment right when he agreed to the condition of his probation barring him from possessing firearms. It is well established that "a waiver of constitutional rights must be voluntary . . . [under] the totality of circumstances." (Citation omitted.) *State* v. *Ross*, 273 Conn. 684, 702, 873 A.2d 131 (2005); see *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). We have long recognized that "while a potential probationer may reject the offer of probation, if he accepts it, he must accept all the conditions sought and cannot accept some and reject others." *State* v. *Smith*, supra, 207 Conn. 169. As a result of their probationary status, probationers "do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." (Internal quotation marks omitted.) Id., 165. In the present case, the defendant voluntarily accepted the terms of his probation and manifested his assent on several occasions to the condition that he could not possess firearms, most notably by signing the acknowledgment that he was to refrain from possessing firearms. The defendant cannot now claim that the conditions of his probation unconstitutionally infringe upon his second amendment right when he himself voluntarily agreed to the temporary restriction on the exercise of his second amendment right imposed by the condition barring him from possessing or having access to firearms. Had the defendant been fundamentally opposed to that particular condition, he was free to reject the offer of probation presented to him.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] In furtherance of our policy of protecting the privacy interests of the

subject of a criminal protective order, we refer to the protected person only by her first initial. See *Wendy V.* v. *Santiago*, 319 Conn. 540, 125 A.3d 983 (2015).

[2] As we conclude that the exclusionary rule does not apply to the present case, we need not consider the defendant's arguments that he did not consent to the probation search and that he was in custody for the purposes of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The constitution of Connecticut, article second, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ."

The policy underlying the separation of powers doctrine is "to prevent the commingling of different powers of government in the same hands." (Internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 505, 811 A.2d 667 (2002).