## STATE OF CONNECTICUT v.
## JOHN TYLER FUESSENICH
## (AC 16605)

Spear, Hennessy and Daly, Js.

Argued April 27—officially released September 1, 1998

*Rita M. Shair*, assistant state's attorney, with whom were *Frank Maco*, state's attorney, and, on the brief, *Guy Wolf*, senior assistant state's attorney, for the appellant (state).

*Patrick S. Bristol*, with whom were *Hubert J. Santos* and *Hope C. Seeley*, for the appellee (defendant).

### Opinion

SPEAR, J. The state appeals from the trial court's dismissal of a violation of probation charge that was filed against the defendant.[1] The state claims as a threshold matter that a probation revocation hearing is a criminal case from which an appeal can be taken pursuant

---

[1] This appeal has been consolidated with both the state's civil appeal from the same judgment (AC 16487) and the defendant's appeal from the trial court's judgment modifying and enlarging the conditions of his probation to include a drug testing provision (AC 16486). Decisions on those appeals have been published separately.

to General Statutes § 54-96.[2] The state also claims that the trial court improperly (1) suppressed test results and (2) found that the defendant's probation officer exceeded his statutory authority by requiring the defendant to submit to urinalysis as a condition of probation. We agree and reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On July 11, 1995, the defendant pleaded guilty to three counts of tampering with evidence in violation of General Statutes § 53a-115.[3] He was sentenced to four years imprisonment with execution suspended and three years probation. The trial court issued a probation order that provided in relevant part: "It is ordered and adjudged that . . . [s]aid defendant during the probationary term fixed shall abide by the written statement of the conditions of probation furnished by the probation officer and the instructions given regarding the same." Thereafter, the defendant was assigned a probation officer. Upon meeting with the defendant the following day, the probation officer required the defendant to sign a form that advised the defendant of his rights and duties with respect to his probation, as well as the conditions of his probation. The written statement contained a drug testing condition that was included by the probation officer.[4] This

---

[2] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused." This court, in response to the defendant's motion to dismiss both of the state's appeals, ordered the parties to brief the issue of whether this is a criminal or civil case for appeal purposes.

[3] The defendant originally was charged with murder in violation of General Statutes § 53a-54a. The defendant's initial trial was declared a mistrial, and he was acquitted of the murder charge after the second trial.

[4] The form set forth ten conditions of probation. The relevant conditions for purposes of this appeal are: "(1) Do not violate any criminal law of the United States, this state or any other state or territory . . . [and] (7) Submit to any medical and/or psychological examination, urinalysis, and/or counsel-

condition was not expressly included by the trial court as a condition of the defendant's probation. The next day, the clerk of the court issued a probation order requiring the defendant to "abide by the written statement of the conditions of probation furnished by the probation officer and the instructions given regarding the same."[5] The defendant's probation officer thereafter required the defendant to provide a specimen for urinalysis. This specimen tested positive for cocaine on August 14, 1995. The probation officer then obtained an arrest warrant for the defendant for the alleged violation of the conditions of his probation. Specifically, the probation officer alleged that the defendant tested positive for cocaine use in violation of his probation condition that he "not violate any criminal law." The defendant was then charged with violating the terms of his probation.

The defendant filed a motion to dismiss the violation of probation charge and to exclude evidence of the test results. In his motion, he asserted that the probation officer exceeded his statutory authority, and violated both the defendant's state and federal constitutional rights by requiring him to submit to urinalysis. The defendant also claimed that because there was no evidence in the sentencing record relating to drug use or abuse by the defendant, the urinalysis condition is not otherwise reasonably related to the tampering with evidence conviction. He further argued that the requirement that he submit to random drug testing therefore violated his right to be free from unreasonable searches and seizures as provided in the fourth amendment to the United States constitution and article first, §§ 7, 8

---

ing sessions as required by the Court, and submit to any alcohol and/or drug testing required by the Probation Officer." The form also stated that the defendant could be arrested and his probation revoked for not complying with the conditions of probation that were listed on the form.

[5] The defendant claims that he never received this order.

and 20, of the constitution of Connecticut. After the conclusion of the defendant's probation revocation hearing, the trial court, *Pickett, J.*, suppressed the urinalysis results, relying on Practice Book § 821, now § 41-12, and *State* v. *Marsala*, 216 Conn. 150, 156, 579 A.2d 58 (1990). The trial court concluded that "the evidence against the defendant was obtained in excess of statutory authority and in violation of his right to be free from unreasonable searches and seizure under article first, § 7, of the constitution of Connecticut." Thereafter, the state represented that it had no other evidence and the trial court, *Walsh, J.*, dismissed the violation of probation charge. The trial court granted the state's motion for permission to appeal the trial court's ruling. This appeal followed.

I

We first address the jurisdictional question of whether a probation revocation hearing is a criminal case that can be appealed to this court pursuant to § 54-96.[6] The state claims that a probation revocation hearing is a continuing consequence of the original criminal conviction that sufficiently relates back to the original criminal proceeding so as to make this a criminal case.[7]

Our Supreme Court has stated that "[t]he element of 'punishment' in probation revocation of [a] defendant is attributable to the crime for which he was originally convicted and sentenced. Thus, any sentence [the] defendant had to serve as the result of the violation of the special condition was 'punishment' for the crime of which he had originally been convicted. Revocation is a continuing consequence of the original conviction

---

[6] See footnote 2.

[7] The defendant argues that the present case is neither a criminal nor a civil case for appeal purposes and, thus, no appeal may be taken pursuant to General Statutes § 54-96.

from which probation was granted." *State* v. *Smith*, 207 Conn. 152, 178, 540 A.2d 679 (1988). "Because [r]evocation is a continuing consequence of the original conviction from which probation was granted . . . and the inherent authority to convict and sentence a defendant flows from the authority to adjudicate a criminal cause of action, the subject matter jurisdiction over a probation revocation proceeding derives from the original presentment of the information." (Citation omitted; internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 306, 610 A.2d 1147 (1992); see also *Liistro* v. *Robinson*, 170 Conn. 116, 128, 365 A.2d 109 (1976).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." *State* v. *Carey*, supra, 222 Conn. 304; 1 Restatement (Second), Judgments § 11 (1982). "Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created. *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 73, 540 A.2d 59 (1988) (*Shea, J.*, concurring), quoting *Connecticut State Employees Association, Inc.* v. *Connecticut Personnel Policy Board*, 165 Conn. 448, 456, 334 A.2d 909 (1973)." (Internal quotation marks omitted.) *State* v. *Carey*, supra, 305. Furthermore, article fifth, § 1, of the constitution of Connecticut provides in relevant part that "[t]he powers and jurisdiction of [the] courts shall be defined by law." General Statutes § 51-164s provides in relevant part that "[t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ." Moreover, "[t]he question of whether the court has such jurisdiction . . . must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction." (Internal quotation marks omit-

ted.) *State* v. *Carey*, supra, 305, quoting *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991).

We conclude that while this case is not a criminal prosecution, it is, nonetheless, a criminal case. This court, therefore, has jurisdiction to consider the appeal pursuant to § 54-96.[8]

II

The state next claims that the trial court improperly determined that the defendant's probation officer exceeded his authority in requiring the defendant to submit to urinalysis as a condition of probation.[9] The state specifically contends that requiring the defendant to submit to urinalysis under the circumstances of this

---

[8] On July 21, 1998, the defendant filed a motion to dismiss the state's appeal and a motion for permission to withdraw his appeal. The defendant claimed that the appeal was moot because his probationary term expired and he was released from probation on July 11, 1998. We denied the motions because, pursuant to General Statutes § 53a-31 (b), the period of the sentence had been stayed. Section 53a-31 (b) provides in relevant part that the "[i]ssuance of a warrant or notice to appear for violation pursuant to section 53a-32, shall interrupt the period of the sentence as of the date of such issuance until a final determination as to the violation has been made by the court. . . ."

[9] At trial, the defendant argued that the probation officer exceeded his statutory authority by imposing a condition of urinalysis that the trial court could not have imposed. This contention is without merit because drug testing could have been originally imposed by the trial court. Our Supreme Court has stated that "restrictions [on a probationer] are meant to assure that the probation serves as a period of genuine rehabilitation and that the community [not be harmed] by the probationer's being at large. . . . Moreover, had the trial court [imposed a condition of drug testing], it would not have unduly intruded on any constitutionally protected right to which the defendant would have been entitled." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 207 Conn. 170. The defendant also maintains that he was coerced into signing the probation form and accepting all the conditions of probation. This contention also fails, however, because our Supreme Court has stated that "while a potential probationer may reject the offer of probation, if he accepts it, he must accept all the conditions sought and cannot accept some and reject others." Id., 169, citing *People* v. *Oppenheimer*, 236 Cal. App. 2d 863, 866, 46 Cal. Rptr. 476 (1965), and N. Cohen & J. Gobert, The Law of Probation and Parole (1983) § 5.07, p. 205.

case was reasonable and that in doing so, the probation officer was acting within his statutory authority pursuant to General Statutes § 53a-30 (b).[10]

Specifically, § 53a-30 (b) provides that "[w]hen a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court *could have imposed* under subsection (a) which are not inconsistent with any condition actually imposed by the court." (Emphasis added.) Additionally, our Supreme Court has noted that § 53a-30 (b) expressly allows either the judge or the probation office to impose reasonable conditions of probation, and such an imposition is not an illegal delegation of the judicial function. *State* v. *Roberson*, 165 Conn. 73, 76 n.1, 327 A.2d 556 (1973). Moreover, "[s]tatutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions." (Internal quotation marks omitted.) *State* v. *Pieger*, 240 Conn. 639, 647, 692 A.2d 1273 (1997); *State* v. *Smith*, supra, 207 Conn. 167. "[I]n determining whether a condition of probation [is proper], a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional

[10] General Statutes § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court."

General Statutes § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (7) refrain from violating any criminal law of the United States, this state or any other state . . . ."

rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Internal quotation marks omitted.) *State* v. *Smith,* supra, 207 Conn. 170.

Here, the state maintains that urinalysis is a reasonable condition of probation because its purpose is to ensure that the defendant is complying with the terms of his probation. Our Supreme Court has stated that "[s]ince probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety—a sentencing court must have the discretion to fashion those conditions of probation it deems necessary to ensure that the individual successfully completes the terms of probation." Id., 168–69; *United States* v. *Williams,* 787 F.2d 1182, 1185 (7th Cir. 1986).

With respect to the extent that constitutional rights should be accorded to probationers, our Supreme Court has recognized that probationers have a diminished expectation of privacy because of their probationary status. *State* v. *Smith,* supra, 207 Conn. 174. "As with parolees, it may be crucial to the success of a probation program for a probation officer to have access to some information that a probationer may be unwilling to divulge and so a probation officer needs to be able to act in a manner that could not be tolerated if done by a policeman or other agent of the state with respect to an ordinary citizen under the fourth amendment." (Internal quotation marks omitted.) Id., 175.

"Although the fourth amendment generally requires a warrant based on probable cause before a search occurs, exceptions exist to this requirement when a legitimate governmental purpose makes the intrusion into one's privacy reasonable. . . . This is consistent with the diminished expectation of privacy that a probationer . . . is to expect in this governmental program

to normalize his relations with society." (Citations omitted.) Id., 174; *United States* v. *Scott,* 678 F.2d 32 (5th Cir. 1982).

Regarding the legitimate needs of law enforcement, our Supreme Court has stated that "the state has a legitimate interest in accurate [fact-finding] in probation revocation proceedings. This interest is clearly furthered by the admission of all reliable evidence, even that which is arguably obtained in violation of the fourth amendment. In addition, the state has an interest in deterring illegal searches and seizures. This interest, however, is not served by the exclusion of illegally seized evidence in probation revocation proceedings when the offending officer was unaware of the suspect's probationary status. We conclude that failure to apply the exclusionary rule in such circumstances is rationally related to legitimate state interests." *Payne* v. *Robinson,* 207 Conn. 565, 574–75, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

On the basis of our review of the record in this case, and our analysis of the factors in *Smith* that are requisite to determining whether the conditions of a defendant's probation are reasonable, we conclude that the urinalysis in this case was a reasonable condition of the defendant's probation and was, therefore, improperly suppressed by the trial court.

### III

The state finally argues that the trial court improperly suppressed the defendant's urinalysis results in the probation revocation hearing and, as a result, improperly dismissed the violation of probation charge. Specifically, the state maintains that because the exclusionary rule does not apply to probation revocation proceedings, the test results were not illegally obtained and were, therefore, improperly suppressed by the trial

court.[11] Our analysis here is guided by our Supreme Court's decision in *Payne* v. *Robinson*, supra, 207 Conn. 565, where the court determined that the exclusionary rule did not apply to probation revocation hearings. In *Payne*, the probationer was stopped in his automobile by a police officer[12] who had information from a complainant that the probationer had threatened the complainant with a gun. While performing a warrantless search of the probationer's car, the officer found a loaded revolver under the driver's seat. The officer arrested the probationer on charges of threatening in violation of General Statutes § 53a-62 and of carrying a dangerous weapon in a motor vehicle in violation of General Statutes § 29-38. The probationer was subsequently charged with violating the conditions of his probation pursuant to General Statutes § 53a-32 (b).[13] The *Payne* court observed that "[t]he purpose of probation revocation proceedings is to determine whether a probationer is complying with the conditions of his probation. *United States* v. *Winsett*, 518 F.2d 51, 55 (9th Cir. 1975) . . . . In such proceedings, the government has an interest in accurate [fact-finding] that is likely to be impaired when otherwise reliable and relevant evidence is excluded from the proceeding. . . . Against this interest, we must balance the deterrent effect that may result from applying the exclusionary rule to probation hearings under the facts of this case. We conclude that application of the rule would at best achieve only a marginal deterrent effect."[14] (Citations

[11] The state further argues that even if the urine sample was illegally obtained, the exclusionary rule is not applicable to a violation of probation hearing because such a proceeding is not a criminal prosecution.

[12] The fact that the probationer was on probation was not known to the police officer at the time of the stop.

[13] General Statutes § 53a-32 (b) provides in relevant part: "No such revocation shall be ordered, except upon consideration of the whole record and unless such violation [of probation] is established by reliable and probative evidence and by a preponderance of the evidence."

[14] The *Payne* court further concluded that while "the exclusionary rule does not apply to this case, we do not reach the question of whether the

omitted.) *Payne* v. *Robinson,* supra, 571; *State* v. *Jacobs,* 229 Conn. 385, 391, 641 A.2d 1351 (1994). The *Payne* court noted that "[t]he purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . . Application of the rule is thus appropriate in circumstances in which this purpose is likely to be furthered." (Internal quotation marks omitted.) *Payne* v. *Robinson,* supra, 570; see *United States* v. *Calandra,* 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).

Here, it was not a police officer, but, rather, the defendant's probation officer who required the defendant to submit a urine sample for drug testing. The fact that the probation officer obviously knew of the defendant's probationary status does not make this case analogous to that of a police officer who is aware that a person is on probation. There was no police participation in requiring the defendant to submit to urinalysis, and the probation officer was acting in accordance with conditions to which the defendant had agreed at the initial meeting of the defendant and the probation officer. Probation officers act under the auspices of the judicial branch in requiring the defendant to submit to conditions of probation. *State* v. *Jacobs,* supra, 229 Conn. 393. "Indeed, as *State* v. *Smith* . . . makes clear, the probation process operates as an arm of the judiciary, not of the police or prosecution." (Citation omit-

exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation hearing might therefore contribute significantly to the deterrence of illegal searches." *Payne* v. *Robinson,* supra, 207 Conn. 573.

ted.) *State* v. *Jacobs*, supra, 393. Thus, when a probation officer demands a probationer's compliance with a condition of probation, he or she is acting as a representative of the judicial branch and not as a police officer. Applying the exclusionary rule to probation revocation hearings would make it more difficult for probation officers to perform properly their job of helping to ensure the rehabilitation of offenders. See *State* v. *Smith*, supra, 207 Conn. 177.

The purpose of the exclusionary rule, to discourage improper police procedure, would not be furthered by applying the exclusionary rule to probation revocation hearings and is inapplicable to the present case. Because *Payne* instructs that the exclusionary rule does not apply to probation revocation hearings, the trial court's suppression of the urinalysis results was improper.

The judgment is reversed and the case is remanded for a new probation revocation hearing at which the urinalysis results will be admissible.

In this opinion the other judges concurred.