STATE OF CONNECTICUT *v.* JEROME F. MOORE
(AC 29099)

Flynn, C. J., and Robinson and Stoughton, Js.

Argued December 9, 2008—officially released February 10, 2009

*Daniel C. Ford*, special public defender, for the appellant (defendant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Jerome F. Moore, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32, following his arrest on charges of sale of narcotics in violation of General Statutes § 21a-277 (a), possession of marijuana in violation of General Statutes § 21a-279 (c), use of drug paraphernalia in violation of General Statutes § 21a-267 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d). On appeal, the defendant claims that (1) a search of his apartment by his probation officer violated his rights under the fourth amendment to the United States constitution, (2) the evidence was insufficient for the court to conclude that the defendant had violated his probation and (3) the court abused its discretion in revoking the defendant's probation. We

disagree and, therefore, affirm the judgment of the trial court.

Our review of the defendant's appeal is based on the following facts. The defendant pleaded guilty on July 14, 2005, to sale of narcotics in violation of § 21a-277 (a). On October 14, 2005, the court convicted the defendant of the charge and sentenced him to five years incarceration, execution suspended, and five years probation. The standard conditions[1] of the defendant's probation included that he refrain from violating "any criminal law of the United States, this state or any other state or territory" and required him to "[s]ubmit to any . . . urinalysis, alcohol and/or drug testing, and or counseling sessions as required by the Court or the Probation Officer." The conditions of probation further required the defendant to "[s]ubmit to a search of [his] person, possessions, vehicle or residence when the Probation Officer has a reasonable suspicion to do so." In addition to these standard conditions, the court ordered various special conditions, including that the defendant participate in "substance abuse evaluation and/or treatment." On three separate occasions, the defendant signed a form detailing the conditions of his probation and indicating that he understood and agreed to abide by them.

On July 11, 2006, the defendant voluntarily submitted a urine sample to his probation officer, Thomas Yoxall, who collected the sample for purposes of a random drug test. The test results showed the presence of cocaine and marijuana. Yoxall determined that the defendant was not attending substance abuse treatment contrary to the defendant's conditions of probation and the defendant's reports to Yoxall. In mid-August, 2006,

---

[1] Standard conditions of probation are imposed on all probationers. The probationer must sign a form detailing these conditions, indicating that the probationer has read, understood and agreed to abide by them. See JD-AP-110 (Rev. July, 2005).

a colleague of Yoxall, while conducting a home visit with the defendant's wife, observed the defendant acting nervously and attempting to conceal drug paraphernalia present in the apartment. On the basis of the test and his colleague's report, Yoxall and two additional probation officers conducted a search of the defendant's apartment on August 29, 2006, the date of the defendant's next scheduled reporting.

Yoxall's search of the defendant's apartment revealed nine bags of a substance later determined to be crack cocaine, a digital scale and bags commonly used for distributing narcotics and additional drug paraphernalia. The probation officers contacted local law enforcement. Officer Joseph Dews of the Waterbury police department arrived and arrested the defendant on a charge of possession of narcotics with intent to sell. In a search of the defendant's person, Dews found a small plastic bag containing what was later confirmed to be marijuana. Yoxall testified that when the narcotics initially were found, the defendant's wife, who was present during the search, told the defendant that she was "sick of this stuff" and that the defendant "hung his head" in response. Dews testified that the defendant told him that the drugs belonged to him and that they did not belong to his wife.

On March 2 and 8, 2007, the court, *Trombley, J.*, held a violation of probation hearing. Following the hearing, during which Yoxall and Dews testified, the court rendered judgment finding that the defendant had violated his probation. The court held that Yoxall's search of the defendant's apartment was justified by the defendant's failed drug test and the colleague of Yoxall's observation of drug paraphernalia in the defendant's apartment. The court further noted that the defendant was aware of the conditions of his probation, having acknowledged them on three previous occasions in writing. The court revoked the defendant's probation and sentenced him

to five years incarceration. The defendant subsequently appealed to this court.

I

The defendant first claims that Yoxall violated his fourth amendment rights when Yoxall searched his apartment without a search warrant. The defendant contends that as a result, the exclusionary rule should have applied to bar the state from introducing evidence discovered during the search at his violation of probation hearing. The defendant failed to preserve this issue for appeal and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We afford the defendant's claim review because the record is adequate for review, and the claim is of constitutional magnitude, as it implicates the defendant's right to be free of unreasonable searches. See *Payne* v. *Robinson*, 207 Conn. 565, 570, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). However, because we conclude that no constitutional violation exists, the defendant's claim fails to satisfy *Golding*'s third prong.

The defendant's terms of probation required that he refrain from violating any criminal laws and that he "[s]ubmit to a search of [his] person, possessions, vehicle or residence when the Probation Officer has a reasonable suspicion to do so." Thus, to justify his search of the defendant's apartment, Yoxall needed a reasonable suspicion that the defendant had violated the terms of his probation. See *State* v. *Smith*, 207 Conn. 152, 174, 540 A.2d 679 (1988). "The reasonable suspicion standard requires no more than that the authority acting [here the defendant's probation officer] be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief . . . that a condition of [probation] has been or is being violated." (Internal quotation marks

omitted.) Id. Prior to searching the defendant's apartment, Yoxall knew that the defendant had used cocaine and marijuana due to the defendant's failed urinalysis. He also was aware that the defendant had not attended substance abuse treatment in accordance with the terms of his probation. In addition, in the week prior to the search, Yoxall's colleague had observed the defendant attempting to hide drug paraphernalia present in his apartment. Considering the foregoing, Yoxall had ample basis for a reasonable suspicion that the defendant had violated the terms of his probation. The defendant was aware of and had signed and agreed to the standard term of his probation that provided that his probation officer could search his premises any time the officer had a reasonable suspicion to do so.[2] We conclude that the search of the defendant's apartment pursuant to the terms of the defendant's probation was reasonable given the circumstances and did not violate the defendant's fourth amendment rights.

Even if we were to determine that Yoxall did not have a reasonable suspicion for his search, the defendant's suppression claim is unavailing because the exclusionary rule does not apply to revocation of probation hearings. This court has considered the question of whether a trial court properly applied the exclusionary rule to suppress evidence in a probation revocation hearing.

---

[2] In his reply brief, the defendant argues that the standard conditions of probation are a contract of adhesion. He contends that because "the conditions of probation are set either by a prosecutor or the court . . . the defendant is in a weak position and has little choice about the terms or conditions of his probation." The defendant was convicted after he pleaded guilty to the charges against him, knowing that he would be placed on probation and that the standard conditions of such probation would apply. He was free to accept this plea agreement or to reject it and to proceed to trial. Under these circumstances, we do not believe that a contract of adhesion analysis is appropriate. Such analysis is generally reserved for contractual agreements in business situations in which one party to the contract is left with virtually no choice but to agree to its terms due to the party's substantially lesser bargaining power.

In *State* v. *Fuessenich*, 50 Conn. App. 187, 190, 717 A.2d
801 (1998), cert. denied, 247 Conn. 956, 723 A.2d 813,
cert. denied, 527 U.S. 1004, 119 S. Ct. 2339, 144 L. Ed.
2d 236 (1999), the defendant's probation officer
required the defendant to submit to a urinalysis, which
ultimately showed the presence of cocaine in the defen-
dant's system. The conditions of the defendant's proba-
tion required him to refrain from violating " 'any
criminal law.' " Id. The defendant filed a motion to dis-
miss the subsequent violation of probation charge and
to exclude evidence of the test results, claiming that
the probation officer had violated his fourth amendment
rights in requiring him to submit to the test. Id. The trial
court agreed with the defendant, excluded evidence of
the test results and dismissed the violation of probation
charge. Id., 191. Thereafter, the state appealed, arguing
that the exclusionary rule did not apply to revocation
of probation proceedings and, therefore, that the court
improperly excluded the evidence. Id., 196–97.

Our analysis in *Fuessenich* was guided by our
Supreme Court's decision in *Payne* v. *Robinson*, supra,
207 Conn. 565. In *Payne*, the court considered whether
the exclusionary rule applies to probationary proceed-
ings when the evidence sought to be excluded was
obtained by a police officer acting unaware of the defen-
dant's probation status and without a search warrant.
The *Payne* court noted that "[t]he purpose of the exclu-
sionary rule is not to redress the injury to the privacy
of the search victim . . . . Instead, the rule's prime
purpose is to deter future unlawful police conduct and
thereby effectuate the guarantee of the Fourth Amend-
ment against unreasonable searches and seizures
. . . ." (Internal quotation marks omitted.) Id., 570,
quoting *United States* v. *Calandra*, 414 U.S. 338, 347,
94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). The court held
that the exclusionary rule would have only a marginal
effect at best in deterring illegal police activity in the

circumstances presented because the use of evidence in a revocation of probation hearing is outside the officer's zone of primary interest. *Payne* v. *Robinson*, supra, 571. The court specifically did not reach the question of "whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status." Id., 573.

After recounting the salient portions of *Payne*, this court distinguished the circumstances under review in *Fuessenich*: "Here, it was not a police officer, but, rather, the defendant's probation officer who required the defendant to submit a urine sample for drug testing. The fact that the probation officer obviously knew of the defendant's probationary status does not make this case analogous to that of a police officer who is aware that a person is on probation. There was no police participation in requiring the defendant to submit to urinalysis, and the probation officer was acting in accordance with conditions to which the defendant had agreed at the initial meeting of the defendant and the probation officer. Probation officers act under the auspices of the judicial branch in requiring the defendant to submit to conditions of probation. *State* v. *Jacobs*, [229 Conn. 385, 393, 641 A.2d 1351 (1994)]. Indeed, as *State* v. *Smith* [supra, 207 Conn. 162–69] makes clear, the probation process operates as an arm of the judiciary, not of the police or prosecution. . . . Thus, when a probation officer demands a probationer's compliance with a condition of probation, he or she is acting as a representative of the judicial branch and not as a police officer. Applying the exclusionary rule to probation revocation hearings would make it more difficult for probation officers to perform properly their job of helping to ensure the rehabilitation of offenders. . . .

"The purpose of the exclusionary rule, to discourage improper police procedure, would not be furthered by applying the exclusionary rule to probation revocation hearings and is inapplicable to the present case. Because *Payne* instructs that the exclusionary rule does not apply to probation revocation hearings, the trial court's suppression of the urinalysis was improper." (Citations omitted; internal quotation marks omitted.) *State* v. *Fuessenich*, supra, 50 Conn. App. 198–99.

In the present case, although the police were present eventually and did arrest the defendant, the primary search was performed by Yoxall, the defendant's probation officer, and two other probation officers. Further, the present case presents circumstances similar to those in *Fuessenich*. In that case, we determined that under our Supreme Court's reasoning in *Payne* and the circumstances presented, the exclusionary rule did not apply to probation revocation hearings. Here, the defendant seeks to apply the rule to exclude from his violation of probation hearing evidence obtained during the course of his probation officer's search of his apartment. Under our holding in *Fuessenich*, the defendant's claim must fail.

We conclude that the defendant's probation officer possessed a reasonable suspicion to search the defendant's apartment, and, therefore, the search did not violate the defendant's right under the fourth amendment to be free from unreasonable searches.

II

The defendant next claims that the evidence was insufficient for the court to find that he had violated his probation. He argues that the record does not support the court's conclusion that he possessed narcotics because there was no evidence that he was in exclusive control of the apartment where the narcotics were discovered. We are not persuaded.

"[A] trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002). "A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003).

The evidence before the court was sufficient for its finding that the defendant had violated the terms of his probation. First, the state offered evidence that the defendant had failed a urinalysis. Second, Yoxall testified that the defendant had not been attending substance abuse treatment as required by the terms of his probation. Third, Yoxall's search of the defendant's apartment revealed narcotics and evidence of an intention on the part of the defendant to sell those narcotics. The defendant also was found to have marijuana on his person. In addition, Dews testified that the defendant

admitted that the narcotics belonged to him, and specifically did not belong to his wife, the other occupant of the apartment. The court also heard testimony as to the reaction of the defendant's wife upon the finding of the narcotics, from which the court was entitled to draw the reasonable and logical conclusion that the contraband belonged to the defendant. We conclude that the court's finding that the state had proven that the defendant had violated his probation by a preponderance of the evidence was not clearly erroneous.

## III

The defendant's final claim is that the court abused its discretion in revoking his probation. We disagree.

"The standard of review of the trial court's decision at the [dispositional] phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 377, 944 A.2d 276 (2008).

"On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Hedge*, 89 Conn.

App. 348, 351, 873 A.2d 254, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

The following additional facts are relevant to our review of the defendant's claim. Yoxal testified at the violation of probation hearing that despite the defendant's failure to attend the substance abuse treatment previously detailed, he was provided an additional opportunity in another treatment program. Yoxall indicated that the defendant again failed to attend required treatment sessions. Yoxall also testified that the defendant had had multiple positive tests indicating drug use over the course of his probation. Evidence of the defendant's criminal record, which included multiple narcotics convictions and two prior violations of probation, was also before the court. On the basis of this evidence, including the pending charges facing the defendant, the court concluded that neither further probation nor a lesser sentence would serve any useful rehabilitative purpose. Accordingly, the court revoked the defendant's probation and reinstated the five year sentence originally imposed.

Our review of the record leads to our determination that the court did not abuse its discretion in revoking the defendant's probation and reinstating his original sentence of incarceration. The court had substantial evidence that while the defendant was on probation, he was engaged actively in the criminal activity for which he had been convicted in October, 2005: possession of narcotics with the intent to sell. The evidence that the defendant had tested positive for drug use on multiple occasions demonstrated that he was not abiding by the terms of his probation. Affording every reasonable presumption to the correctness of the court's ruling, as we must, we conclude that the court's decision was not an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.