******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* CARLOS A. ROMERO
(AC 42213)

Alvord, Keller and Elgo, Js.

*Syllabus*

The defendant, who had been on probation in connection with a prior conviction, appealed to this court from the judgment of the trial court revoking his probation and sentencing him to thirty months of incarceration. Following a stop of a van in which the defendant was a passenger and a subsequent search of his hotel room, the defendant was arrested and charged with possession of narcotics with intent to sell and possession of drug paraphernalia. At his probation revocation proceeding, certain evidence was admitted that had been obtained from the stop and the search of his hotel room. After the close of evidence, the trial court denied the defendant's motion to suppress, declining to recognize an exception to the general inapplicability of the exclusionary rule to probation revocation proceedings, and ruled that the search of the defendant's hotel room was lawful. On appeal, the defendant claimed that under the circumstances of the case, the trial court improperly declined to apply the exclusionary rule pursuant to article first, § 7, of the Connecticut constitution. *Held* that the defendant could not prevail on his claim that the trial court improperly declined to apply the exclusionary rule, as the warrantless search at issue did not violate the Connecticut constitution; a standard condition of the defendant's probation provided that he submit to a search of his person, possessions, vehicle or residence when a probation officer has a reasonable suspicion that he was violating conditions of his probation, which diminished his reasonable expectation of privacy and furthered the state's dual interests in facilitating the defendant's rehabilitation and protecting society from any future criminal violations by him, and there was no requirement in the defendant's probation search condition that a warrant be procured before a search was conducted, and the probation officer and investigator in this case possessed sufficient reasonable suspicion to suspect that the defendant was engaged in a sale of narcotics and that his hotel room might contain further evidence of such criminality to conduct their search of the defendant's hotel room, the defendant having been observed leaving a hotel parking lot, walking to the parking lot of certain neighboring apartments, approaching a driver of a van and reaching his hand into the van's front driver side window, and entering the van, and, after a motor vehicle stop of the van was conducted, the driver of the van was observed visibly shaking and beginning to cry, a needle and glassine bags were discovered on the driver's person, the driver admitted to purchasing $50 worth of heroin, the sum of $50 was found in one of the defendant's pockets, a room card key for the hotel was found on the defendant, and a hotel clerk stated that the defendant had been staying at the hotel.

Submitted on briefs March 18—officially released July 14, 2020

*Procedural History*

Substitute information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of New London, geographical area number eleven, where the case was tried to the court, *Jongbloed, J.*; thereafter, the court denied the defendant's motion to suppress; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*J. Christopher Llinas*, filed a brief for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney,

*Michael L. Regan*, state's attorney, and *Lawrence Tytla*, former supervisory assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Carlos A. Romero, appeals from the judgment of the trial court finding him in violation of probation under General Statutes § 53a-32. On appeal, the defendant claims that, under the facts of his case, the court improperly declined to apply the exclusionary rule pursuant to article first, § 7, of the Connecticut constitution in his probation revocation hearing. Because we conclude that the search at issue in this case did not violate article first, § 7, of the Connecticut constitution, we do not reach the defendant's claim that the exclusionary rule applies under the particular circumstances of his case.[1] Accordingly, we affirm the judgment of the court.

The following facts and procedural history are relevant to this appeal. On June 2, 2015, the defendant pleaded guilty to assault in the second degree under General Statutes § 53a-60 (a) (1) and received a sentence of five years incarceration, suspended after two years, followed by three years of probation. The defendant's probation commenced on August 10, 2016. On July 18 and September 1, 2016, the defendant signed his conditions of probation, demonstrating that he understood them and would follow them. The standard conditions of the defendant's probation required that he, inter alia, "not violate any criminal law of the United States, this state or any other state or territory," "[k]eep the [p]robation [o]fficer informed of where you are, tell your probation officer immediately about any change to your . . . address," and "[s]ubmit to a search of [his] person, possessions, vehicle or residence when the [p]robation [o]fficer has a reasonable suspicion to do so." In addition to the standard conditions, under a section of the conditions of probation form titled "Court Ordered Special Conditions," the defendant was required to avoid "new arrests."

On March 17, 2017, the defendant was arrested and charged with possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). In May, 2017, the defendant was charged with violation of probation under § 53a-32. On June 13, 2018, the defendant filed a motion to suppress in his violation of probation proceedings. The court reserved ruling on the defendant's motion to suppress until after the close of evidence. After the presentation of all evidence, the court found the following facts.

On March 17, 2017, Investigator Bridget Nordstrom of the Groton Police Department was on duty and accompanied by Parole Officer Ray Belville in an unmarked police vehicle. Nordstrom and Belville were assigned to a regional task force that was formed to combat the heroin epidemic by actively looking for narcotic and prostitution related criminal activity. The

focus of the task force required Nordstrom and Belville to frequently surveil local hotels. On March 17, Nordstrom and Belville observed the defendant exit the parking lot of the Rodeway Inn (hotel) in Groton and walk through a wooded area to the parking lot of the Groton Towers, an apartment complex (apartments) adjacent to the hotel. Nordstrom recognized the defendant and believed him to be a resident of the hotel because she had seen him there approximately eight to ten times over the prior two months. The defendant walked up to the driver side window of a van that had just entered the parking lot. The defendant reached his hand into the driver side window; he then proceeded to enter the van through its front passenger side door. The van exited the parking lot and was followed by Nordstrom and Belville.

The van was driven from the parking lot to the Ninety-Nine Restaurant (restaurant), approximately one-eighth to one-quarter of a mile along Bridge Street. The van entered the restaurant's parking lot and parked. Nordstrom and Belville exited their vehicle and approached the van to identify the driver and the defendant because they believed that they had witnessed a "hand-to-hand" drug transaction.[2] As they made their approach, Nordstrom and Belville were in plain clothes and displayed their badges to the driver and the defendant. The driver, who was later identified as Luis Rosario, was visibly shaking and began to cry. Rosario exited the vehicle upon request by Nordstrom and Belville. Rosario was asked if he had anything illegal in his van or on his person, to which he admitted to possessing a needle in his sock. Belville removed the needle from Rosario's sock and, as he was doing so, discovered glassine baggies inside one of Rosario's socks. Rosario was asked by Nordstrom whether he had purchased the bags from the defendant, to which he responded, "are you trying to get me killed?"

Nordstrom approached the defendant, who was "compliant" and had his hands on the van's dashboard. The defendant was ordered out of the van, handcuffed, and searched. The defendant was found to possess $50 in one pocket, approximately $57 in the other pocket, and a room card key for the hotel. Nordstrom asked the defendant if he was staying at the hotel, which he denied. Nordstrom asked the defendant if he was on probation, to which he responded affirmatively; Nordstrom further confirmed that the defendant was on probation by conducting a criminal history search in the National Crime Information Center database.

Following her discovery that the defendant was on probation, Nordstrom contacted a New London county probation officer and part-time member of the regional task force, Terry Granatek. Granatek arrived on the scene in fewer than ten minutes. While waiting for Granatek, the defendant denied selling drugs to Rosario.

Rosario admitted to having purchased $50 worth of heroin, the same amount of money found on the defendant in one of his pockets.

Following Granatek's arrival on the scene, Nordstrom informed him of her reasons for stopping the van, that she suspected a sale of narcotics had occurred, and that the defendant was on probation and asserted that he was residing in Hartford. Granatek recognized the defendant because he had previously seen him outside of the hotel on a few occasions. Granatek confirmed with the defendant that he was on probation. Granatek asked the defendant if he was staying at the hotel, which the defendant denied. The defendant was transported to the hotel because the officers had a reasonable basis to believe that he was residing there due to his possession of a card key to the hotel. Nordstrom and Granatek approached the clerk at the hotel's front desk to inquire whether the defendant was staying at the hotel. The clerk informed Nordstrom and Granatek that the defendant had been staying at the hotel with his girlfriend, Adaly Estrella, and provided them with the room number. Nordstrom, Granatek, and Police Officer Sean O'Brien, walked to the hotel room, knocked on its door, and were greeted by Estrella. Estrella pointed out possessions of the defendant.

With some assistance from Nordstrom, Granatek performed a search of the room, from which the following items were discovered: plastic sandwich bags, the corners of which can be used for packaging narcotics;[3] seven cell phones, five of which were the defendant's; and a black duffel bag containing mail addressed to the defendant, men's clothing, a cylindrical pill container with a white powder residue within, glassine bags stamped with a red devil, a digital scale, and a jar containing marijuana residue. One of the defendant's cell phones displayed an incoming text message that referenced "fire," a term that can be associated with heroin. A subsequent lab test of the residue found in the cylindrical pill container determined that it consisted of fentanyl, heroin, and tramadol.

Following the close of evidence, the defendant argued that his motion to suppress should be granted because the stop of the van and the search of his hotel room were unconstitutional under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. The defendant further argued that, under the circumstances of his case, an exception to the general inapplicability of the exclusionary rule in probation revocation proceedings should be recognized, and that the evidence collected from the stop of the van and the search of his hotel room should be suppressed. The state opposed the motion to suppress, arguing that (1) the defendant, as a passenger in the van, had no reasonable expectation of privacy—and, thus, no standing—to contest the stop of the van

and (2) the search of his hotel room was "specifically authorized by the conditions of probation that [the] defendant assented to."

In its ruling on the defendant's motion to suppress, the court declined to recognize an exception to the general inapplicability of the exclusionary rule in the defendant's probation revocation hearing. The court further ruled that the search of the defendant's hotel room was lawful, stating that "condition number twelve of the defendant's conditions of probation require[d] [him] to submit to a search of his person, possessions, and residence when there's a reasonable suspicion to do so. Here there was a reasonable suspicion to do so." The court found, by a preponderance of the evidence, that the defendant committed a violation of probation, revoked his probation, and sentenced him to thirty months of incarceration.[4] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that, under the circumstances of his case, the court improperly declined to apply the exclusionary rule pursuant to article first, § 7, of the Connecticut constitution in his probation revocation hearing. Specifically, the defendant argues that an exception to the general inapplicability of the exclusionary rule in probation revocation hearings is warranted under the state constitution when officers conduct a search of a probationer *after* learning of that individual's probation status.[5] In support of this argument, the defendant cites *Payne* v. *Robinson*, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), a case in which our Supreme Court considered "[w]hether the exclusionary rule of the fourth amendment to the United States constitution applies to probation revocation hearings . . . ." (Footnote omitted.) Id., 570. To address this question, the court balanced the state's interest in accurate fact-finding, which would have been impaired by an application of the exclusionary rule, against the deterrent benefits of the rule. Id., 571. The court concluded that "the balance of interests does not favor the application of the exclusionary rule to a probation hearing in these circumstances." Id. The court further stated: "[W]e emphasize that in holding that the exclusionary rule does not apply to this case, we do not reach the question of whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation hearing might therefore contribute significantly to the deterrence of illegal

searches." Id., 573.

In the ensuing cases, our Supreme Court recognized the general inapplicability of the exclusionary rule to probation revocation hearings. See *State* v. *Jacobs*, 229 Conn. 385, 392, 641 A.2d 1351 (1994) ("[w]e note initially that, unlike criminal trials, in which the exclusionary rule typically applies, in probation revocation hearings, the exclusionary rule typically does not apply"); see also *State* v. *Maietta*, 320 Conn. 678, 686, 134 A.3d 572 (2016); *State* v. *Foster*, 258 Conn. 501, 507, 782 A.2d 98 (2001). In each of those cases, however, the court was not presented with facts inviting it to reach the question it had reserved in *Payne*: "whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status." *Payne* v. *Robinson*, supra, 207 Conn. 573.[6]

In *State* v. *Jacobs*, supra, 229 Conn. 392, the court concluded that the case was not appropriate "for deciding whether the *Payne* dictum is correct" because "[t]he presence of a warrant [made the] case critically different . . . ." "Unlike a warrantless search, a search authorized by a warrant presupposes that the officer has persuaded a Superior Court judge that probable cause exists to believe that the defendant has committed a crime and that evidence of that crime exists at the place to be searched." Id., 392–93. As to whether the exclusionary rule would apply to a search performed with a patently defective warrant, the court declined to address that issue, stating that the "case [did] not present that factual scenario." Id., 394. In *State* v. *Foster*, supra, 509–10, the court stated that, "[a]s in *Jacobs*, the search in [this] case was made pursuant to a search warrant and [did] not present itself as one of egregious, shocking or harassing police misconduct. . . . Moreover, the defendant made no offer of proof that the state police who discovered the evidence and executed the search warrant knew that he was on probation at the time." (Footnote omitted.) Lastly, in *State* v. *Maietta*, supra, 320 Conn. 687, the court determined that "nothing in the underlying record indicates that . . . [the] probation officers were conducting the searches at the behest of the police or for reasons other than to ensure that the defendant was in compliance with the terms of his probation" and that the "case contain[ed] no egregious, shocking or harassing police misconduct that would merit the application of the exclusionary rule." (Internal quotation marks omitted.)

In this appeal, Granatek and Nordstrom performed a warrantless search of the defendant's hotel room after they discovered that he was on probation. In this regard, we are provided with facts permitting us to reach the question reserved in dictum by our Supreme Court in *Payne* and noted by its progeny. Nevertheless, we do

not reach that question in this case because we conclude that the search of the defendant's hotel room did not violate his right to be free from unreasonable searches under article first, § 7, of the Connecticut constitution. Accordingly, the exclusionary rule has no applicability in this case irrespective of whether the rule might apply in probation revocation proceedings when officers who conducted a warrantless search were previously aware of an individual's probationary status.

"In reviewing a trial court's decision on a motion to suppress, [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary] . . . ." (Internal quotation marks omitted.) *State* v. *Maietta*, supra, 320 Conn. 686; see also *State* v. *Geisler*, 222 Conn. 672, 694 n.15, 610 A.2d 1225 (1992) ("legal issues, e.g., whether information sufficed to give officers reasonable suspicion or probable cause, reviewed de novo"). Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any persons or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."[7] "[T]he exclusionary rule bars the government from introducing at trial evidence obtained *in violation of* the fourth amendment to the United States constitution. . . . The rule applies to evidence that is derived from unlawful government conduct, which is commonly referred to as the fruit of the poisonous tree . . . . In *State* v. *Dukes*, 209 Conn. 98, 115, 547 A.2d 10 (1988), [our Supreme Court] concluded that article first, § 7, of the Connecticut constitution similarly requires the exclusion of *unlawfully seized* evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Brocuglio*, 264 Conn. 778, 786–87, 826 A.2d 145 (2003). Thus, if a search is lawful, the exclusionary rule will not apply.

The defendant argues that because the search of his hotel room was conducted without a warrant, probable cause and exigent circumstances, or consent, it was unconstitutional under article first, § 7, of the Connecticut constitution.[8] We are unpersuaded.[9]

In *United States* v. *Knights*, 534 U.S. 112, 114, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001), the Supreme Court decided whether a search of a defendant pursuant to a search condition of his probation,[10] and supported by reasonable suspicion, satisfied the fourth amendment. The court noted that neither the terms of the defendant's probation search condition nor the fourth amendment limited permissible searches pursuant to that condition to those with probationary, rather than

investigatory, purposes. Id., 116–18. The court further refrained from determining whether the defendant's "acceptance of the search condition constituted consent . . . of a complete waiver of his [f]ourth [a]mendment rights . . . because [it] conclude[d] that the search of [the defendant] was reasonable under [the] general [f]ourth [a]mendment approach of examining the totality of the circumstances . . . with the probation search condition being a salient circumstance." (Citation omitted; internal quotation mark omitted.) Id., 118. The court then considered the reasonableness of the search "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (Internal quotation marks omitted.) Id., 118–19.

According to the court, the government's legitimate interests were the rehabilitation of the defendant and the protection of society from his commission of future criminal violations. Id., 119–20. With respect to the second interest, the court stated that "it must be remembered that the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." (Internal quotation marks omitted.) Id., 120. Therefore, the search condition of probation advanced the government's interests, while diminishing the defendant's reasonable expectation of privacy. Id., 119–20. The court held "that the balance of these considerations require[d] no more than reasonable suspicion to conduct a search of [the defendant's] house." Id., 121. Moreover, the court concluded that the warrant requirement was unnecessary under the circumstances. Id. Thus, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Id.; see also *State* v. *Smith*, 207 Conn. 152, 174, 540 A.2d 679 (1988) ("Although the fourth amendment generally requires a warrant based on probable cause before a search occurs, exceptions exist to this requirement when a legitimate governmental purpose makes the intrusion into one's privacy reasonable. . . . This is consistent with the diminished expectation of privacy that a probationer, such as this defendant, is to expect in this governmental program to normalize his relations with society. The standard required to justify the search here by a probation officer . . . [is] reasonable suspicion . . . ." (Citations omitted; internal quotation marks omitted.)

In *State* v. *Moore*, 112 Conn. App. 569, 574–75, 963 A.2d 1019, cert. denied, 291 Conn. 905, 967 A.2d 1221 (2009), this court held that a warrantless search of the apartment of a defendant on probation did not violate the fourth amendment to the United States constitution.

This court stated that "[t]he defendant's terms of probation required that he refrain from violating any criminal laws and that he '[s]ubmit to a search of [his] person, possessions, vehicle or residence when the [p]robation [o]fficer has a reasonable suspicion to do so.'" Id., 574. Because the defendant's urine tested positive for cocaine and marijuana, and a colleague of the defendant's probation officer observed the defendant attempting to hide drug paraphernalia while the colleague was present in the apartment, this court determined that the defendant's probation officer "had ample basis for a reasonable suspicion that the defendant had violated the terms of his probation. The defendant was aware of and had signed and agreed to the standard term of his probation that provided that his probation officer could search his premises any time the officer had a reasonable suspicion to do so." Id., 575.

Although the defendant in the present case argues that the search of his hotel room violated his rights under the state constitution, he failed to provide an independent analysis of whether article first, §7, of the Connecticut constitution provides probationers with greater protection from warrantless searches than provided by the fourth amendment. See *State* v. *Geisler*, supra, 222 Conn. 684–85 (setting forth appropriate factors to address whether "the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court" (internal quotation marks omitted)). As such, the holdings of *Knights* and *Moore* govern our analysis of whether the warrantless search of the defendant's hotel room was unreasonable and, thus, in violation of article first, §7, of the Connecticut constitution.

As in *Moore*, a standard condition of the defendant's probation was that he "[s]ubmit to a search of [his] person, possessions, vehicle or residence when the [p]robation [o]fficer has a reasonable suspicion to do so." See *State* v. *Moore*, supra, 112 Conn. App. 574. The defendant signed the conditions of his probation, thereby manifesting an understanding of and assent to those conditions. The defendant's probation search condition diminished his reasonable expectation of privacy and furthered the state's dual interests in facilitating the defendant's rehabilitation and protecting society from any future criminal violations by him. See *United States* v. *Knights*, supra, 534 U.S. 119–20; *State* v. *Smith*, supra, 207 Conn. 174. Furthermore, there is no requirement in the defendant's probation search condition that a warrant be procured before a search is conducted of his "person, possessions, vehicle or residence . . . ." See also *United States* v. *Knights*, supra, 121 (dispensing with fourth amendment warrant requirement for searches of probationers who are subject to search condition and when there is reasonable suspicion).

Accordingly, the defendant could reasonably be subjected to a search of his residence and possessions when a probation officer had reasonable suspicion that he was violating conditions of his probation. "The reasonable suspicion standard requires no more than that the authority acting . . . be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief . . . that a condition of [probation] has been or is being violated." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 112 Conn. App. 574. For the reasons that follow, we conclude that Granatek and Nordstorm possessed sufficient reasonable suspicion to conduct their search of the defendant's hotel room.

The defendant was observed by Nordstrom leaving the hotel parking lot, walking through a wooded area to the parking lot of the neighboring apartments, and approaching the driver of a van that had just pulled into the parking lot. The defendant reached his hand into the van's front driver side window, then entered the van through the front passenger side door. Nordstrom followed the van after it left the parking lot and drove approximately one-eighth to one-quarter of a mile down Bridge Street, until it entered the parking lot of the restaurant. The van stopped in the restaurant's parking lot. Nordstrom and Belville approached the van to make identifications of those inside it.[11] The driver of the van, Rosario, was observed visibly shaking and beginning to cry. A needle and glassine baggies were discovered on Rosario's person. After being asked whether he purchased the glassine baggies from the defendant, Rosario replied "are you trying to get me killed?" Subsequently, Rosario admitted to purchasing $50 worth of heroin. The sum of $50 was found in one of the defendant's pockets, matching the amount of money Rosario admitted to paying for the heroin.

A room card key for the hotel was also found on the defendant, but he denied to Nordstrom that he was staying there. After Nordstrom learned that the defendant was on probation, she contacted Granatek because he was a local probation officer. When Granatek arrived on the scene, Nordstrom shared with him the reasons for her stop of the van, and that the defendant was on probation and reported living in Hartford. The defendant again denied staying at the hotel when he was asked by Granatek. Because the defendant had a hotel key card and had been observed by both Granatek and Nordstrom outside the hotel multiple times prior to March 17, 2017, Granatek reasonably suspected that the defendant was being deceitful when he denied staying at the hotel. The defendant was transported to the hotel, where Granatek and Nordstrom inquired of the front desk clerk whether the defendant was staying at the hotel. The clerk stated that the defendant had been staying at the hotel with Estrella.[12] Granatek went to the defendant's room and performed a probation check

of the hotel room, with some assistance from Nordstrom.

In light of the foregoing facts found by the court, it was reasonable for Granatek and Nordstrom to suspect that the defendant was engaged in a sale of narcotics and that his hotel room might contain further evidence of such criminality. Therefore, the warrantless search of the defendant's hotel room pursuant to the search condition of his probation was lawful.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant further claims that the court improperly concluded that there was sufficient evidence that he violated his probation. The defendant concedes that if we disagree that the exclusionary rule applies under the facts of his case, there is sufficient evidence to find him in violation of probation. In light of our conclusion that the evidence presented at his probation revocation proceeding was not collected from an unlawful search, we need not reach the defendant's sufficiency of the evidence claim.

[2] A young child was discovered in a car seat in the van's second row of seating.

[3] The plastic sandwich bags were found without their corners cut off.

[4] Thereafter, the state entered a nolle prosequi of the charges pending in the underlying criminal case.

[5] In *Pennsylvania Board of Probation & Parole* v. *Scott*, 524 U.S. 357, 368–69, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998), the United States Supreme Court refused to recognize an exception to the general inapplicability of the exclusionary rule in parole revocation hearings. The holding in *Scott* has been interpreted to apply in probation revocation hearings. See *United States* v. *Hightower*, 950 F.3d 33, 37 (2d Cir. 2020); *United States* v. *Hebert*, 201 F.3d 1103, 1104 and n.2 (9th Cir. 2000); *United States* v. *Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999); *State* v. *Foster*, 258 Conn. 501, 508–509 n.6, 782 A.2d 98 (2001).

The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[6] In *State* v. *Jacobs*, supra, 229 Conn. 389–90, the defendant claimed that "the fourth amendment exclusionary rule applies to a revocation of probation proceeding if the officers performing the search knew or should have known of the defendant's probationary status . . . ." Following the United States Supreme Court decision in *Pennsylvania Board of Probation & Parole* v. *Scott*, 524 U.S. 357, 357, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998); see footnote 5 of this opinion; the defendant in *State* v. *Foster*, supra, 258 Conn. 502, claimed that the exclusionary rule applied in probation revocation proceedings under article first, § 7, of the Connecticut constitution. In *State* v. *Maietta*, supra, 320 Conn. 681, the defendant claimed that the exclusionary rule under the fourth and fourteenth amendments to the federal constitution should apply to his probation revocation hearing.

[7] The fourth amendment to the United States constitution provides individuals with similar protections. See footnote 5 of this opinion.

[8] On appeal, the defendant does not claim that the search of the hotel room was unlawful under the fourth amendment to the United States constitution. In addition, the defendant does not claim that the stop of the van was unconstitutional under either the fourth amendment to the United States constitution or article first, § 7, of the Connecticut constitution. Accordingly, we do not consider those issues.

[9] On appeal, the state does not argue that the judgment should be affirmed because the search of the defendant's hotel room was constitutional. The defendant does, however, claim that the search of his hotel room was unconstitutional under article first, § 7, of the Connecticut constitution. Because we conclude that the search of the hotel room was lawful, and the lawfulness of that search is dispositive, we decide the defendant's appeal on this basis.

[10] The probation condition, agreed to by the defendant, provided that he

would "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." (Internal quotation marks omitted.) *United States* v. *Knights*, supra, 534 U.S. 114.

[11] On appeal, the defendant does not challenge the legality of the stop of the van and, therefore, we do not consider that issue. See footnote 8 of this opinion.

[12] The defendant's conditions of probation do not define "residence," as that term is used in the search condition. Nonetheless, because Nordstrom and Granatek had seen the defendant outside the hotel multiple times before March 17, and the hotel clerk had told Granatek that the defendant was staying at the hotel, it was reasonable for Granatek to infer that the hotel room was the defendant's residence. See *State* v. *Drupals*, 306 Conn. 149, 163, 49 A.3d 962 (2012) (interpreting "residence," as that term is used in General Statutes § 54-251 (a), to mean "the act or fact of living in a given place for some time, and . . . does not apply to temporary stays").

[13] The defendant argues that "[r]ather than seek a search warrant to search [his] hotel room after discovering that [he] was on probation, the police enlisted the assistance of . . . Granatek, who was assigned to New London county and was not involved in the supervision of [him] in any way." The defendant further argues that because Granatek was not his probation officer, he did not have access to his probation conditions to know of the search condition. To the extent that the defendant argues that only his probation officer may perform a search of his residence and possessions under the search condition, he has provided us with no authority to support that proposition. As a probation officer, Granatek was authorized to "supervise and enforce all conditions of probation ordered pursuant to section 53a-30." General Statutes § 54-108 (b). The defendant's search condition is a standard condition of probation. See *State* v. *Moore*, supra, 112 Conn. App. 575 (referring to "*standard term* of . . . probation that provided . . . probation officer could search . . . premises" (emphasis added)). We thus find these arguments unavailing.